[OCTOBER TERM, 1923]

## ALLEN v. HOUN

(No. 1046; October 2, 1923; 219 Pac. 573.)

APPEAL AND ERROR—REHEARING—EXTENSION OF TIME—DISTRICT
COURTS—JURISDICTION—ACTIONS FOR RECOVERY OF REAL PROPERTY
—EJECTMENT—CIVIL ACTIONS—FORCIBLE ENTRY AND DETAINER—
STATUTORY CONSTRUCTION—REMEDIAL STATUTES—CUMULATIVE REM-
EDIES—PLEADINGS.

1. An application for rehearing unsupported by the filing of
   briefs within the time specified by court rule 23 is not
   entitled to consideration.

2. There being no statute rule or precedent for extending the
   time for filing a petition for rehearing or briefs in sup-
   port thereof, an application for such extension unaccom-
   panied by a showing of ''Unavoidable casualty or over-
   whelming necessity,'' which might justify the suspen-
   sion of a rule of court to avoid manifest injustice, will
   be denied.

3. District Courts do not possess original jurisdiction in the
   action or proceeding known as forcible entry and de-
   tainer, provided for by statute.

4. An action brought upon pleadings in the District Court for
   the recovery of real property is a civil action provided by
   the code of civil procedure, as a substitute for the com-
   mon law action of ejectment, and the ancient possessory,
   real action for which ejectment had itself become a sub-
   stitute.

5. The code of civil procedure of 1886, abolishing the various
   forms of actions at law and suits in equity, and provid-
   ing for one form of action to be called a ''Civil Action,''
   did not abolish the remedies theretofore afforded by ac-
   tions at law and suits in equity. Such rights of action
   remain, and the remedy recoverable by the use of former
   actions at law or suits in equity, may still be secured by
   the civil action which the code has substituted.

6. The new rules of pleading prescribed by Comp. Stats. 1920,
   Secs. 6236-6337 for the recovery of real property by civil
   action, were established to enforce existing rights of ac-

tion and remedies of parties, none of which were abol-
ished, but which had previously been enforcible through
the means of the actions that were thereby abolished.

7.  The common law action for the recovery of real property
was ejectment.  The new action of the code is the same
in substance as the former action of ejectment without
the fictions and technicalities of pleading and practice
with which it was encumbered.

8.  The title to real property may be tried in the code action
prescribed for the recovery of real property, the same as
in the common law action of ejectment, thus distinguish-
ing it from a proceeding in forcible entry and detainer.

9.  In civil actions for the recovery of real property, posses-
sion is the relief sought, based upon a title giving right
of possession, and also to establish the right of property
as between the parties giving the right of possession.

10.  The rule of strict construction is not applicable to the pro-
visions of the code for the recovery of real property
which merely prescribed a new procedure for the en-
forcement of a common law remedy and for the further
reason that the code itself provides that its provisions
are to be liberally construed to promote its objects and
assist in obtaining justice.

11.  The action of forcible entry and detainer was not a civil
action at common law.  It existed as a criminal proceed-
ing under an early English statute prohibiting forcible
entry on land; by a later statute it was made a summary
civil remedy for claimants, whose rights were based
upon actual prior possession as against a forcible entry or
a forcible detainer after peaceable entry, the legal right
of possession or title, not being triable thereunder.

12.  The civil action of the code to recover real property and
the proceeding of forcible entry and detainer, are unlike
in their nature and result, considered from the stand-
point of effect, the right of possession based upon superior
legal title not being involved in the latter.

13.  Remedial statutes providing a new remedy for an old right,
are construed to be cumulative, and existing rights of
action are not thereby affected, unless expressly taken
away.

14.  District Courts do not exercise special power in the code
action for the recovery of real property, but only their
general and original jurisdiction of rights existing at
common law.  The proceeding of forcible entry and de-
tainer can exist only by statute, and is not a substitute

for ejectment, though it may in certain cases be regarded as a new remedy for an existing common law right, and cumulative only in such cases.

15. The fact that defendant in ejectment or in the substituted civil action of the code for the recovery of real property, may not deny plaintiff's title, or is estopped from doing so, does not affect the right of plaintiff, with a title giving the right of possession to maintain the action.

16. A title in fee is not necessary to support an action of ejectment, unless essential under the circumstances for the purpose of showing a better title than that of the defendant in possession.

17. The statutory provisions for forcible entry and detainer do not in any way interfere with the jurisdiction of district courts in actions to recover real property under the civil code, but are merely cumulative so far as they may cover the same class or classes of cases.

18. The original common law and equity jurisdiction of district courts conferred by Article V, Sec. 10 of the Constitution, is general and unlimited, and also extends to all cases and proceedings in which jurisdiction shall not have been vested exclusively in some other court.

19. Averments of a petition in an action for the recovery of real property held sufficient under Comp. Stats. 1920, Sec. 6236, prescribing the essentials of a petition in an action of that character.

APPEAL from the District Court, Fremont County; CYRUS O. BROWN, Judge.

On petition for rehearing; for former opinion, see 29 Wyo. 413; 213 Pac. 757.

*Bryant S. Cromer,* for plaintiff and respondent.

*A. C. Allen,* for defendant and appellant.

POTTER, Chief Justice.

On April 2, 1923, this case was disposed of upon its merits by a decision affirming the judgment appealed from. On April 30, 1923, a petition for rehearing was filed in the cause. That was within the time prescribed by our rules for an application for rehearing, our rule 23 providing that the application shall be "by petition to the court, signed by counsel, briefly stating the points wherein it is alleged that the court has erred," and that "such petition shall be

filed within thirty days after the decision is rendered and shall be accompanied by a brief (five copies of which shall be filed) of the points and authorities relied on in support thereof." The said petition includes, as part of the alleged grounds for rehearing, a statment of certain legal propositions which might have been accepted as a brief in support of the petition, considering the paper as a combination of petition and brief, although entitled only as an application for rehearing. And we think it may have been so intended. Only one copy of the paper, however, was filed, failing, therefore, to comply with the rule requiring the filing of five copies of the brief within the specified time, and therefore the petition, as filed, was not entitled to consideration. Tuttle v. Rohrer, 23 Wyo. 305, 318, 153 Pac. 27, 149 Pac. 857. See also Bank of Chadron v. Anderson, 6 Wyo. 518, 536, 49 Pac. 406; 48 Pac. 197; Dean v. Oil Co., 21 Wyo. 133, 128 Pac. 881, 129 Pac. 1023.

The rule aforesaid provides further that there shall be no oral argument on the petition for rehearing unless such argument is requested by the court, and, conforming to our established practice, the said petition in this case was taken under advisement upon our attention having been called to it by the clerk, on May 1, 1923, which date preceded by one day the expiration of the time for filing a petition for rehearing in the case. Our attention was then also called to a request in the closing paragraph of the petition for sixty days additional time in which to file appellant's brief "containing grounds for a rehearing," and a stipulation of opposing counsel consenting thereto attached to the petition. Said request was based upon the grounds, stated in said closing paragraph of the petition, that appellant's attorney was then engaged in the preparation of briefs and abstracts in a number of other causes pending in this court, which had been advanced for hearing, and "that in view of the great amount of work involved in the preparation of briefs and abstracts" in said cases, "it will be impossible for attorney for appellant herein to prepare additional briefs for

rehearing in the above entitled cause unless such additional time be granted by this court.''

Our rules make no provision for an extension of time for an application for rehearing or for filing the required brief in support thereof, and no such practice has been estab-. lished here. Bank of Chadron v. Anderson, supra; Dean v. Oil Co., supra. Having in mind, when the petition for rehearing was taken under advisement as aforesaid, that there was no provision of statute or rule or any precedent in our practice for extending the time for filing a petition for rehearing or brief in support thereof, we did not then grant the request for an extension, not caring to establish such a practice or precedent for it, though no order was then made concerning the matter. And we remain disinclined to grant such a request, especially in the absence of any showing of ''unavoidable casualty or overwhelming necessity'' which might justify the suspension of a rule of the court to avoid manifest injustice. See Cronkhite v. Bothwell, 3 Wyo. 739, 31 Pac. 400; Phillips v. Brill, 15 Wyo. 521, 90 Pac. 443; Whiting v. Straup, 15 Wyo. 530, 90 Pac. 445; Fried v. Guiberson, 28 Wyo. 208, 201 Pac. 854. And clearly the showing here does not disclose any such misfortune or necessity as to justify a suspension of the strict operation of the rule. Indeed, we see nothing in the reasons stated for the requested extension that should have prevented the filing, within the time specified by the rule, of a sufficient number of copies of the petition to comply with the rule, so far as it might be considered as a brief.

While we might properly deny a rehearing of this cause upon the ground alone that the petition is not entitled to consideration, we are not inclined to do that without stating our very strong conviction that the cause was correctly disposed of by the former opinion and enlarging somewhat upon the reasons for that conclusion. In the examination necessary to determine the standing of the petition for rehearing, we could not escape noticing the points stated as legal propositions challenging the correctness of our conclusion.

And they seem to us to be so clearly based upon a misunderstanding of the character of this action and the nature and effect of our statutory actions for the recovery of the possession of real property as to justify an elaboration of our views respecting the question of practice presented, which involves also a substantive right—a right of action—and has seldom been before this court for discriminative consideration.

The first ground stated in the application for rehearing is that the court failed to consider the case of Jenkins v. Jeffrey, 3 Wyo. 669, 29 Pac. 186, and the second that the court failed to consider the case of White v. Veitch, 197 Pac. 985 (27 Wyo. 401). The citation of the last mentioned case in the former opinion clearly shows that it was considered, especially since the justice who wrote the opinion in this wrote also the opinion in that case. The fact that Jenkins v. Jeffrey was not referred to in the former opinion, though cited in appellant's brief, is not to be taken as evidence that it was not considered. If the court's failure to refer in an opinion to all of the cases cited should be deemed ground for rehearing, much additional labor would be thrown upon the court, and it would be an argument for long rather than short opinions. We do not doubt, however, the right of counsel, in a petition for rehearing, to call attention to the fact that a decided case of this court clearly in point, or an authoritative case decided elsewhere, has or seems to have been overlooked. But the facts are that the case of Jenkins v. Jeffrey was considered and was well known to the court independently of its citation in counsel's brief, and it was not mentioned in the opinion because not deemed sufficiently in point upon the question presented and discussed. So far as in point, it was and is believed to be opposed to appellant's contentions. That the court failed to consider Section 6396, C. S. 1920, a section of the civil code, in the chapter containing general provisions concerning its application, is stated as the 5th ground. That section has only a distant application, if any, and none, in our opinion,

favorable to appellant's contention. But our view concerning its effect upon the principal question in this case will be stated in discussing that question.

The question submitted by the legal propositions stated as the remaining grounds for rehearing is the same question considered in disposing of the cause by the former opinion, and we might decline to again consider it in this case, except for reasons above stated. It was presented in the District Court, by a motion to dismiss the petition, at the conclusion of the evidence upon the trial of issues raised by the pleadings involving the right of the plaintiff to the possession of real property held in possession by defendant under a written lease from the plaintiff for a term of years. That term had not expired by the lapse of time, but plaintiff alleged that it had been declared forfeited by him, as expressly permitted by the lease, for defendant's violation of certain of its conditions; and defendant admitted by his answer the execution of and his entry under the lease, plaintiff's ownership in fee, and the giving of the alleged notice of forfeiture and to quit the premises, but denied that plaintiff was entitled to possession, and, specifically as well as generally, that defendant had violated any covenant or condition of the lease.

The grounds of that motion may be stated as disclosing the contention here: 1. That plaintiff's petition and the evidence in its support describes lands of which plaintiff claims to be the owner and entitled to the immediate possession; and the petition alleges a lease with defendant by which he agreed to farm and cultivate said lands for an interest or share in the crops produced thereon. 2. Defendant, in his answer and the evidence in support thereof, admits plaintiff's ownership of the lands, and his (defendant's) entry upon said premises under said lease. 3. That plaintiff asks that the lease be forfeited and cancelled on the ground that defendant failed to keep and perform certain agreements and covenants therein contained. 4. That defendant claims possession solely by virtue of the lease and

denies that he has failed to keep and perform all the coven-
ants in the lease.  5. That this is an action for possession
and not one involving title, and, therefore, "is an action in
forcible entry and detainer and a special proceeding under
which the District Court has no original jurisdiction."

The evidence is not in the record, but the parties were
each regularly before the court, and the judgment is shown
to have been rendered upon a trial of the cause upon the
pleadings and the evidence.  The only question, therefore,
is whether the District Court had jurisdiction of the subject
matter of the cause, in the exercise of its original jurisdic-
tion conferred by the Constitution and laws of the State.
We quite agree with the contention that the District Court
does not possess original jurisdiction in an action or pro-
ceeding known as Forcible Entry and Detainer, which is
provided for by statutory provisions, contained in what
may be called the justices' code, a part of our statutes orig-
inally enacted under the title:  "An Act to establish the
courts of and define the jurisdiction of justices of the
peace."  L. 1869, Ch. 1; L. 1871, pp. 15-68; Comp. L. 1876,
Ch. 71.  And it was distinctly so held in Jenkins v. Jeffrey,
supra.  We accept as correct also the asserted proposition
that in such an action title is not involved, another principle
acknowledged as sound in the Jenkins-Jeffrey case, the
court going to the extent in that case of holding that in an
action of forcible entry and detainer neither the title to
land nor the boundaries of land can be properly disputed or
called in question, and that a provision in another part of
the justices' code is, therefore, inapplicable to a forcible
entry and detainer action, viz., a provision requiring the
justice to cease proceedings in a cause and certify it to the
District Court for trial or further proceedings "if it ap-
pear   *   *   *   from the evidence of either party, that the
title to land or boundaries shall be disputed or brought in
question by the other party, by pleading or evidence."  But
the court said that evidence of title is sometimes admissible
in such a suit to show the purpose for which the entry was

made, and the character and extent of the defendant's possession.

From that point, except in part as to one other proposition, the views of appellant's counsel and the court seem to diverge. Before going into a discussion of the points upon which the court holds a view essentially or definitely opposed to the contention of counsel, it seems advisable to refer to a matter not necessary in our opinion to decide, for the reason as will be shown, that we do not regard this case as an action of forcible entry and detainer.

It was assumed in the former opinion, without deciding the point, that the plaintiff might properly have brought his action under the statutory provisions for summary proceedings in forcible entry and detainer before a justice of the peace. We do not care to continue that assumption in disposing of the application for rehearing, though we shall not decide the question. It is at least not clear that upon the pleaded facts in this case an action of forcible entry and detainer would lie. The right of possession is claimed here through a forfeiture of the lease for a violation by the tenant of some of its conditions, not on the ground of an expiration of the term through lapse of time. While it is said that there are some decisions to the contrary, it is declared by respectable authority as the generally accepted rule that statutes authorizing summary proceedings in case the tenant holds over after the "expiration of his term" are construed to apply only to the expiration of a lease by lapse of time, and not by forfeiture on breach of condition. 24 Cyc. 1417; 2 Tiffany L. & T. 1751; 2 Taylor L. & T. (9th Ed.) § 713. Whether such decisions would apply under our statute extending the proceeding to cases of tenants "holding over their terms" has not been considered. For whether plaintiff might have had that remedy or not we do not entertain the slightest doubt of his right upon the alleged facts to pursue the remedy provided by the "civil code," generally so-called because prescribing the procedure in civil causes and enacted under the title: "An

Act to establish a code of civil procedure." Laws 1869, Ch. 75; Laws 1873, Ch. 1; Comp. Stat. 1876, Ch. 13; Laws 1886, Ch. 60. Nor do we doubt in the least that, as determined by the pleadings, which must be the criterion, together with the fact that it is brought in the District Court, this is a civil action to recover real property provided by said code as a substitute for the common law action of ejectment, and the ancient possessory real actions for which ejectment had itself become a substitute. (Blackst. Com. Book 3, 197.)

The action provided by the said "civil code" for the recovery of real property was ushered into the statutes by a provision in the 3rd section of the Act of 1869 originally establishing the code, abolishing the distinctions between actions at law and the forms of all such actions and suits theretofore existing, and creating in their place a single form of action to be called the "civil action," a provision of the 12th section abolishing "feigned issues" and another in Section 31 declaring that every action, except as otherwise provided, must be prosecuted in the name of the real party in interest. That code was adopted at the first session of the Legislature of the Territory; and neither it nor the Act of 1873 abolished the distinctions between actions at law and suits in equity, but a separate equity practice was maintained until, by the enactment of the code of civil procedure of 1886, the "civil action" was established in place not only of actions at law but also of suits in equity; that code declaring that "in their place" (actions at law and suits in equity, and the forms of all such actions and suits) "there shall be, hereafter, but one form of action, which shall be called a' civil action." And that code, as well as the prior codes abolished feigned issues, and required every action to be prosecuted, with stated exceptions, in the name of the real property in interest.

The actions at law, the distinctions between which and the forms thereof were abolished by the codes of 1869, 1873 and 1886, were, of course, the actions at common law. But

the remedies of such actions were not abolished, nor any
right of action formerly enforced by either of such reme-
dies. Thus it is said in Pomeroy's Code Remedies, (3rd Edi-
tion) :

"The single civil action for the protection of all primary
rights and the enforcement of all primary duties is the cen-
tral element of the new procedure. All distinctions between
actions at law and suits in equity, and between the differ-
ent forms of common-law actions, having been swept away,
the suit in equity and the common-law actions themselves,
as distinctive judicial instruments have been abrogated and
in their stead has been substituted the one civil action
*   *   *.  the distinctions between law and equity are not
abolished; these two departments of the municipal law,
*comprising their distinctive and peculiar primary rights
and duties, and furnishing their special remedies, are left
untouched by the legislation,*   *   *   *.  While the change
does not extend to the groups of rights and duties them-
selves which are collectively called 'law' and 'equity,' *nor
to the remedies which have been used in maintaining such
rights and duties,* but is entirely confined to the judicial
instrument by means of which the remedies are sought after
and obtained, in its operation and effect upon that instru-
ment, it is complete. All distinctions between the action
formerly used to enforce equitable rights and obtain equit-
able remedies and those formerly used to enforce legal
rights and obtain legal remedies are removed; and one
judicial proceeding, with the same essential principles and
features, is to be used in enforcing all species of rights and
obtaining all kinds of remedies.   *   *   *   *The rights of
action remain,* and the remedies which could be recovered
by the use of any particular action may still be secured by
means of the civil action which the codes have substituted in
the place of all the previous forms; when, under given cir-
cumstances, an injured party might, by resorting to some
one of the various actions at law, have obtained a judgment
for land, or chattels, or money, he can, under exactly the

same circumstances, recover a like judgment by the means which the reformed procedure furnishes to him. To this extent, and no further, whatever was substantial in the old forms of action has been preserved." Sections 34-37.

So we find the following in Bliss on Code Pleading (§ 6, 2nd Ed.) : "But it is only the form and the name of the action that is abolished. Distinctions between the character of different actions necessarily arise from the nature of the wrong which is suffered and of the relief which is sought, and these cannot be abolished. * * * The whole case often clusters around the name; and the action is just as much an action of trover, or of replevin, or of ejectment, as though so called in the pleading. When the statute says that there shall be but one form of action, form, and not substance, is spoken of." In Phillips on Code Pleading (§ 162) it is said that the prescribed use of but one form of proceeding, the civil action, "did not affect, or undertake to affect, the composition of a right of action— the investitive and culpatory facts that give rise to the remedial right; for it is the province of the substantive law, and not of the law of procedure, to determine what facts shall confer a primary right, and what facts shall amount to an invasion thereof and authorize an action." And, again, referring to the provisions of the new procedure substituting one form of procedure, known as the civil action, it is said: "These provisions have neither abolished nor affected legal or equitable rights and reliefs. Legal and equitable rights and defenses remain as before; the modes of asserting them are changed."

Having established the civil action to take the place of all the pre-existing actions abolished, the code proceeded to provide rules of procedure therefor, including rules of pleading, following the Ohio rather than the New York method of procedure, which differed in some matters of practice but in principle and in most respects were substantially the same. It declared that all fictions in pleadings are abolished; that the petition of the plaintiff shall,

among other things, contain "a statement of the facts constituting the cause of action in ordinary and concise language;" that in an action for the recovery of real estate, the property shall be described with such certainty as will enable an officer holding an execution to identify it (C. S. 1920, Sec. 5685) ; and, as now found in C. S. 1920, Sec. 6236, quoted in the former opinion, the allegations which shall be sufficient in that action, viz., that the plaintiff has a legal estate in the property, is entitled to the possession thereof, and that defendant unlawfully keeps him out of the possession ; and further, by a section now known as Section 6237, C. S. 1920, that it shall be sufficient, in such action, if the defendant in his answer deny generally the title alleged in the petition, or that he withholds the possession, but that if he denies plaintiff's title, possession by defendant shall be taken as admitted.  It was held in Ohio that the rules prescribed in Section 6237 relate only to cases where the plaintiff's alleged right, or the fact that the defendant withholds possession from the plaintiff, is denied, the court saying: "If, however, these facts cannot be denied, and the defendant relies upon new matter as grounds of defense, as, for instance, an equitable title and right of possession in himself, such new matter must be pleaded in his answer, as required by certain other sections of the code permitting the defendant *in his answer* to set up as many grounds of *defense* as he may have "whether they be such as have been heretofore denominated legal or equitable, or both" and providing that a statement of new matter constituting a defense shall be set forth in ordinary and concise language, and without repetition.  Powers v. Armstrong, 36 O. S. 357.

The several provisions of the civil code relating to actions for the recovery of real property do not, as contended by appellant's counsel, prescribe merely rules of pleading. They do prescribe such rules, especially the provisions of sections 6236 and 6237 aforesaid.  But they establish the civil action in place of all actions then existing,—those ex-

isting at common law,—and which were necessarily in force
in Wyoming immediately upon its organization as a Terri-
tory, which occurred before the last of May, 1869, when the
Governor, Secretary and Judges had qualified and entered
upon the discharge of the duties of their office respectively
(see Preface to Published Laws of 1869), more than six
months before the first adoption of the civil and justices'
codes, both of which were approved on the same date, De-
cember 10, 1869. The rules of pleading were prescribed
for the new action established to enforce the existing rights
of action and remedies of parties, none of which was abol-
ished, but which had previously been enforceable through
the means of the actions that were abolished. Nor is it
material that, as counsel suggests, these code rules of plead-
ing and procedure do not confer jurisdiction. We think,
however, that in a sense their effect is to confer jurisdiction
of causes to which they relate upon the court having gen-
eral original jurisdiction of such causes. But jurisdiction
had been already and competently conferred upon the dis-
trict courts by the then superior legislative authority, the
Congress of the United States, by the Organic Act of the
Territory, which created said courts and vested them with
chancery and common law jurisdiction, and authority for
redress of all wrongs committed against the Constitution or
laws of the United States or of the Territory affecting per-
sons or property. The same instrument declared that jus-
tices of the peace shall not have jurisdiction in any matter
in controversy when the title or boundaries of land may be
in dispute, or where the debt or sum claimed shall exceed
one hundred dollars; and it authorized generally appeals
to the Supreme Court from the district courts. Then the
state Constitution, our present written fundamental law,
succeeding as such the Organic Act aforesaid, declares that
the district court, which was retained, shall have original
jurisdiction of all cases at law and in equity, and in all
criminal cases, and all matters of probate and insolvency,
and of such special cases and proceedings as are not other-

wise provided for (Art. V. Sec. 10) ; and also denied to jus-
tices of the peace jurisdiction when title to or boundaries of
real estate shall come into question.   (Art. V., Sec. 22).

Thus we have the civil action for the recovery of real
property, with certain rules prescribed as to procedure,
maintainable in the district courts of the State, as the de-
clared substitute for the action for that purpose at common
law.   And that action was ejectment (Pomeroy's Code. R.
§§ 17, 21) which, as said by Blackstone, had, in practice,
superseded the ancient real actions for more than a century
before his Commentaries were written (Blackst. Com., Vol.
2, Book 3, 197) ; the new action of the code being the same
in substance as ejectment, but without the fictions and tech-
nicalities of pleading and practice with which it was en-
cumbered.   2 Kinkead's Code Pl., Sec. 1046 ; Bliss on Code
Pl., 2nd Ed., Sec. 9, Par. IV ; Mexican Gulf Oil Co. v. Cam-
pania Trans. D. P. S. A., 281 Fed. 148, 164 ; Jenkins v. Jeff-
rey, supra.   The opinion in the Jenkins case refers to eject-
ment as the same as the action under the code to recover
real property.

At this point we agree with another contention of coun-
sel, viz : that title to the property may be tried in the code
action to recover real property, the same as in ejectment as
that action had come to be used at common law ; thus clear-
ly distinguishing it from a proceeding in forcible entry and
detainer.   But we cannot agree that recovery of possession
is a mere incident of the trial of title in either the code ac-
tion or its predecessor, the action of ejectment.   On the con-
trary, possession is the relief sought, based upon a title giv-
ing right of possession, or, to state it differently, but with
substantially the same meaning, the action is to recover
possession and also to establish the right of property as be-
tween the parties giving the right of possession.   Black-
stone, in his Commentaries, said of ejectment (Book 3, 205,
206), that it is founded on the same principle as the ancient
writs of assize, being calculated to try the mere *possessory*
title to an estate.   In Adams on Ejectment (p. 10) it is

said that the action became gradually the regular mode of proceeding for the trial of possessory titles, and (p. 11) was confined to cases where the claimant has a possessory title, "that is to say, a right of entry upon the lands." It was, indeed, first invented for the specific purpose of restoring possession to a tenant for a term of years, whose only remedy prior to that against a wrongful ejector was a personal action of trespass, to recover damages. Phillips on Code Pl. Sec. 89. The judgment, if for plaintiff, was that he recover his term, with damages and costs, upon which a writ of execution issued to put the plaintiff in possession. Id., Sec. 91. It is said in Newell on Ejectment (page 809) that the judgment was declared by Lord Mansfield to be a recovery of the possession (not of the seizure or freehold) without prejudice to the right, as it may afterward appear, that was between the parties. In Pomeroy's Code Remedies (3rd Ed., Sec. 98) the author says that during its existence as a strict common-law instrument, the action was a possessory one, in which the judgment never determined the question of title; that its use in trying titles was wholly a matter of convenience, no rule of the common law making it a means of settling a disputed controversy as to title. It did, however, come into general use, whether by custom or statute we need not inquire, as a means of trying possessory titles or the right of possession based upon title; so that we are willing to concede that titles to that extent were thereby tried and determined and to the same extent are now triable by the civil action of the code for the recovery of real property. 19 C. J. 1030-31; 2 Taylor L. & T. 9th Ed. Sec. 698; and see Pomeroy's Code Remedies, Sec. 17, where it is said that the action of ejectment "always preserved the form of a mere possessory proceeding, although it finally took the place of even the petitory real actions as the means of trying titles."

The fact that at common law the ordinary remedy of a landlord for the recovery of possession is the action of ejectment was stated in the former opinion, and also that it

was the only civil remedy to which he could resort, aside
from statutory summary proceedings for possession, citing
Taylor on Landlord & Tenant. The following may also be
cited: Adams on Ejectment, Ch. IV, pp. 140-198; Newell
on Ejectment, pp. 165-234; 2 Tiffany L. & T., p. 1503, Sec.
215; 18 Ency. L., 2nd Ed. 434; 24 Cyc. 1399, 1400; 16 R.
C. L. 1181. We quote the following from Tiffany: ''Orig-
inally, at common law, the proper form of action by a land-
lord to recover possession from the tenant was a writ of
entry *ad terminum qui praeteriit.* Subsequently, upon the
introduction of the action of ejectment, this became the
recognized mode of recovery by the landlord. * * *
An action of ejectment brought by a landlord against his
tenant does not differ from such an action when brought by
any other person.'' And the following from Adams on
Ejectment, under the chapter heading: ''Of the Action of
Ejectment as between Landlord and Tenant:

''When tenancies are determined by the efflux of time or
the happening of a particular event, the right of entry in
the landlord at once accrues, and he may proceed to recover
the premises without notice or demand of possession. No
comments, therefore, are necessary upon this division of the
subject, but it will be necessary to enter fully into the prin-
ciples by which tenancies from year to year are governed
and the rules which have been laid down for the regulation
of the rights of re-entry for the breach of covenants and
conditions. Firstly, as to tenancies from year to year.
* * * Secondly, of the termination of a tenancy by the
non-payment of rent or the non-performance of a condition
or covenant. The right to terminate a tenancy by a notice
to quit is given by the common law, and is necessarily inci-
dental to a tenancy from year to year; the termination of
tenancy by the non-payment of rent, or the breach of a
covenant or condition, arises only under express agreement,
and seldom occurs but where the tenant has a written lease
for a determinate period. It has already been observed
that an actual entry upon the lands was formerly necessary

before an ejectment could be maintained and that the claim-
ant's title must be of such a nature as to render his entry
lawful. When, therefore, a lease for years was granted to
the tenant, and the right of possession thereby transferred
to him, the landlord could not legally enter upon the land
during the continuance of the term; and was consequently
without remedy to recover back his possession whilst the
term lasted, although the tenant should neglect to render
his rent, or otherwise disregard the conditions of his grant.
When terms for years increased in length and value, this
became a serious evil to landlords.  *  *  *  As a means
of obviating these difficulties, it became the practice for
landlords to insert in their leases a proviso declaring the
lease forfeited, if the rent remained unpaid for a certain
time after it became due, or if any other particular coven-
ant of the lease were broken by the lessee, and empowering
the landlord in such cases to re-enter upon, and re-occupy
his lands. When provisos of this nature were first intro-
duced, the ancient practice prevailed, and of course actual
entries were then made in these as in all other cases; and it
seems also to have been necessary, for some years after the
modern practice was invented, and the sealing of leases dis-
pensed with, for landlords to make actual entries upon the
lands, before they could take advantage by ejectment of the
forfeiture of a lease. This useless form is now indeed abol-
ished; but as the right to make the entry is still necessary,
the provisos are continued to the present day in their an-
cient terms.  *  *  *  The *power generally reserved in
leases* to landlords, *to re-enter in case the rent* shall remain
in arrear for a certain time after it is due, is the *most com-
mon proviso upon which ejectments for forfeitures are
founded.*''

The author then continues the discussion by showing that
where the right to re-enter has accrued to the landlord
through a forfeiture on other grounds he then may bring
the action of ejectment to recover possession. In Newell
on Ejectment it is stated that while ejectment as a remedy

for a landlord to recover possession of lands unlawfully
withheld by the tenant often proves to be "inadequate,
dilatory and very expensive," *the remedy still exists* in the
American States and is in some instances probably the most
effective of all remedies given for the recovery of real prop-
erty *where the relation of landlord and tenant exists;* that
in order to maintain an action in ejectment against his ten-
ant, "the landlord must prove at the time of commencing
the action a present right to the immediate possession of the
premises; that this right may be established by showing
that the term for which the premises were let had expired
according to the provisions of the lease, that the tenancy
had been actually terminated by a forfeiture of its condi-
tions, or in some other manner sufficient in law." pp. 166-
167.

Ejectment being available to the landlord at common law
to obtain possession from the tenant when the landlord's
right to possession as against the tenant has accrued, it
must be his right to resort to the code substitute for eject-
ment. It was said by one of the earliest of the text writers
on the Ohio code, that the object of the action under the code
is to obtain possession, and hence the party having the ac-
tual possession must be defendant, "so that he may be
turned out and plaintiff put in possession, if the latter re-
covers." And illustrating one phase of the action,—the
issue of unlawful detention—that author said: "If the
plaintiff avers a fee, and the defendant has a lease unex-
pired, he may plead that he did not unlawfully detain; and
he must succeed, if, admitting the title of the plaintiff, he
can show a right of possession in opposition to that title.
Hence tenants must plead the latter plea, and show their
derivative title as an answer to the unlawful detention."
And later states the same principle thus: "If the plaintiff
then avers a title in fee, a lessee cannot deny it, because it
is true; hence he must defend under the plea that he does
not unlawfully keep the plaintiff out of possession; and,
under this plea, his lease will prove that he does not so

keep him out of possession." 2 Nash's Pl. & Pr., 4th Ed., 1204-5, 1209. See also, Adams v. Parnell, 11 O. C. C. Rep. 567; Ellison v. Foster, 19 O. Dec. (16 N. P. Rep.) 849; Buetlinger v. Hurley, 34 Kan. 585, 9 Pac. 197; Kellogg v. Lewis, 28 Kan. 535; Hamill v. Jalonick, 3 Okl. 223, 41 Pac. 139. In Ellison v. Foster it was held, citing the Ohio code Section 5781 (our Section 6236) and Adams v. Parnell, supra, that an action of ejectment after forfeiture of a lease is the appropriate remedy to recover possession of the demised premises.

It follows from what has been said that counsel's contention that the provisions for the action to recover real property under the civil code should be construed strictly as providing for a mere statutory proceeding, so as to limit their application only to cases coming *strictly* within their operation, cannot be accepted, even if such a rule would make any difference in the operation and application of said provisions, which we are not willing to concede. But the civil code itself prescribes the rule of construction by a provision which is significant as indicating the legislative understanding of the purpose of the code in abolishing old actions to be replaced by a single action under another name. It is and has been continually provided by said code that its provisions shall be liberally construed so as to promote its objects and assist parties in obtaining justice, and that the rule of the common law that statutes in derogation thereof must be strictly construed has no application. Comp. Laws 1876, Ch. 13, Sec. 2; Comp. L. 1920, Sec. 5532.

The action of forcible entry and detainer, on the other hand, is not strictly a common law proceeding or remedy. It existed as a criminal proceeding from an early date in England, but under a statute prohibiting a *forcible entry* upon land. Afterwards, by statute also, it became a civil remedy for a *forcible entry* or a *forcible detainer* after a peaceable entry. Blackst. Com. Book 3, 179. But it involved only a mere possession, that is to say where the claimant's right was based only on the fact of a prior pos-

session taken or detained from him *forcibly,* and the *legal right of possession was not tried.* Blackstone says: "For, if one turns or keeps another out of possession forcibly, this is an injury of both a civil and criminal nature. The civil is remedied by immediate restitution; which puts the ancient possessor *in statu quo:* the criminal injury, or public wrong, by breach of the king's peace, is punishable by fine to the king." And the proceeding existed without interfering at all with the real actions of the common law, viz: writ of entry, assize, and writ of right, the latter to try the right of property, and the two former to try the right of possession only but where there was an apparent or claimed right of possession in the tenant or occupant removable only by orderly course of the law, and eventually ejectment superseding the three.

Forcible entry and detainer is always purely statutory. It was originally a remedy for the protection of the actual possession, whether rightful or wrongful, against forcible invasion, and is strictly possessory in its nature. 26 C. J. 812. As already shown and as counsel concedes, it cannot be used to determine titles, although, where permitted by statute, expressly or impliedly, evidence of title may be admissible to show the right to have or retain possession. Hence the two actions, the civil action of the code to recover real property (the code substitute for the common law action of ejectment), and forcible entry and detainer, are not alike in their nature, nor in their result considered from the standpoint of effect. In forcible entry and detainer, the legal right to possession based upon some title superior to that of the other party is not usually involved, and as held by this court in Jenkins v. Jeffrey, supra, is not involved under the statute in this state. Brennan v. Shanks, 24 Okl. 563, 103 Pac. 705. In that case the Oklahoma court's holding was to the same effect as Jenkins v. Jeffrey. There, as here, justices of the peace have jurisdiction to try forcible entry and detainer actions. The court held that title could not be involved, and if a party sought to have title adjudi-

cated in the action, or to oust the court of jurisdiction, the averment for that purpose should be stricken out on motion. And this distinction between the two actions is a sufficient reason for holding the statutory action not to be an exclusive remedy in any case, at least unless expressly so provided by the statute. Newell on Ejectment, 663, 856; Riverside Co. v. Townshend, 120 Ill. 9; 9 N. E. 65; Stoner v. Mau, 11 Wyo. 366, 72 Pac. 193, 73 Pac. 548. The Illinois court in the cited case said: "But a judgment in an action of forcible entry and detainer can not be pleaded, as a bar to an action of ejectment, for the reason, that the questions involved in the two proceedings, are different."

But there are other decisive reasons for that conclusion. It is a well settled rule of construction of remedial statutes that where the statute simply provides a new remedy for an old right, the remedy provided thereby is cumulative, and existing rights of action are not affected unless expressly taken away. 36 Cyc. 1175-6; 26 Ency. L., 2nd Ed., 671; Sutherland on Stat. Constr., § 399; 25 R. C. L. 1052, 1058. It is said in Sutherland, at the section cited: "Where a statute gives a new remedy for a right existing and enforcible at common law or in equity, and contains no negative, express or implied, of the old remedy, the new one provided is cumulative, and the party may elect between the two." Also in the same section: "Statutes affirmative of the right, and prescribing other than the usual remedies for its enforcement, or conferring cognizance of it upon other tribunals, not negativing the pre-existing remedies or jurisdiction, in their very nature are merely cumulative, and not exclusive." And that this rule is applicable to forcible entry and detainer statutes and proceedings making them merely cumulative, is held in numerous cases; indeed, we have found no case to the contrary, and none has been cited. Clearly there can be no doubt as to which of our statutes provides the new remedy, if either.

The district court, in the code action in the nature of ejectment, does not exercise a special power, as seems to

be argued, but its general and original jurisdiction. The right sought to be enforced by plaintiff existed at common law. Likewise the remedy,—ejectment—in place of which is established, not a new remedy, but a different form of action under another name for the same remedy. That remedy would have been available to plaintiff if the statutes provided no other in its place. But a proceeding in forcible entry and detainer can exist here *only* by statute. It is not a substitute for ejectment. Jenkins v. Jeffrey, supra. So far as our statute on the subject may be applicable to facts alleged in this case, it must be regarded, in comparison with the civil action of the code, as a new remedy for a right existing and enforcible at common law, and necessarily cumulative only, under the rule aforesaid, at least in the absence of a provision to the contrary, and none is to be found in the statute. On the contrary it contains a provision affirmatively recognizing the civil code remedy and action,—a provision declaring that the pendency of the action (forcible entry and detainer) shall not be a bar to an action of ejectment. C. S. 1920, Sec. 6636.

The effect of the argument that the forcible entry and detainer proceeding is the exclusive remedy in every case to which it applies, for we understand that to be the argument, is that the legislature by the statute providing for that proceeding has deprived a landlord, in case of non-payment of rent when due, or a holding over his term by a tenant, of a right which existed at common law, when so provided in the lease, a right to re-enter by virtue of his title, and an adjudication of that right in a court of common law jurisdiction. And it would also deny to a purchaser of real estate upon execution or mortgage foreclosure the right to bring the civil action of the code to recover possession where the debtor was in possession at the time of judgment, since forcible entry and detainer is extended by the statute to such cases. To say the least, a statute to that effect, without giving to the landlord, or purchaser at judicial sale, an equally comprehensive remedy, would certainly be unreasonable, and

the intention to do that should be plainly expressed, if, indeed, the existence of legislative authority to thus limit the jurisdiction of the district courts be assumed. See 15 C. J. 731, 732.

In addition to the authorities cited in the former opinion as directly or in effect holding that a summary proceeding in forcible entry and detainer is merely a cumulative remedy, we refer to the following as only a few of the many others that might be cited. In Malony v. Adsit, 175 U. S. 281; 20 Sup. Ct. 115, 44 L. Ed. 163, it was contended that the action brought to recover possession of land must fail because coming within a statutory provision to the effect that in an action to recover the possession of land, where the entry is forcible, or where the possession is unlawfully held by force, the merits of the title shall not be inquired into, and three years' quiet possession of the premises immediately preceding the commenement of the action may be pleaded in bar thereof, unless the estate of the party in possession is ended. Answering that contention, the court said:

"If this were indeed an action in forcible entry and detainer, and as the complaint shows on its face that the defendant's possession was longer than three years prior to the commencement of the action, then the defendant was entitled to have had his demurrer sustained. But * * * this was not an action for a forcible entry and detainer, * * * but was an action of ejectment to which the statute pleaded did not apply."

In Buettinger v. Hurley, 34 Kans. 585, 9 Pac. 197, the Supreme Court of Kansas had before it two cases of the same title, one an action of unlawful detainer commenced originally before a justice of the peace, and another, an action in the nature of ejectment, brought under the civil code in the district court; the parties being respectively landlord and tenant, the landlord being the plaintiff in each case. Judgment was rendered for the defendant in the

justice's court, and upon appeal to the district court, again
in favor of the defendant; and in the other action upon a
.trial in the district court, judgment was also rendered in
defendant's favor. Each judgment was in the Supreme
Court upon a separate petition in error. The district court
had held that the plaintiff landlord could not maintain an
action in the district court in the nature of ejectment to
recover from his tenant, while the action of unlawful de-
tainer for the same land was pending in the district court
on appeal from the justice of the peace. The Supreme
Court held to the contrary and reversed the judgment in
the action brought originally in the district court. The
court said that the unlawful detainer action was not in fact
pending when the ejectment action was commenced, having
been disposed of several months prior to that time, but con-
tinued the discussion by stating that the action of unlawful
detainer is not the same as the action of ejectment, or the
same kind of action, either in substance or in form, and the
judgment in the ejectment action was reversed on that
ground. It appeared that each of said actions had been
brought by the landlord on the ground that the tenant had
failed to pay rent.

Kirsh v. Smith, 64 Cal. 13, 27 Pac. 942 was an action of
ejectment brought in the superior court wherein the de-
fendant asked leave to amend his answer so as to set up in
bar a judgment of the county court in an action of forcible
entry and detainer brought by the plaintiffs for the posses-
sion of the same premises in controversy. The trial court's
refusal to allow the amendment was sustained by the Su-
preme Court, which held that the judgment would not have
been a bar. The court said: "As this is an action of eject-
ment, and the county court had no jurisdiction of an action
of ejectment, nor of any other action in which its judg-
ment would be a bar to an action of ejectment,
we 'do not think there was an abuse of discretion
in denying the motion to file the amendment." In
another California case, Fish v. Benson, 71 Cal. 428, 12

Pac. 454, the court held (quoting from the syllabus) : "A judgment roll, in an action of forcible entry and detainer of real property, is not admissible in an action between the same parties, involving the title to the same property, since the title to real property cannot be tried in that action." In McKinnon v. Johnson, 59 Fla. 332, 52 So. 288 the court said: Restitution proceedings and ejectment are not inconsistent or co-extensive proceedings, but they are consistent and cumulative remedies.  *  *  *  The facts necessary to be established in an action of ejectment are essentially different from those necessary in proceedings of restitution." It is held also in Florida that the action of ejectment will lie "whenever a right of entry exists and the interest is of such a character that it can be held and enjoyed and possession thereof delivered in execution of the judgment for its recovery." Walters v. Sheffield, 75 Fla. 505, 78 So. 539. And that is the well-settled general rule.  19 C. J. 1032.

It is said in Corpus Juris: "The action (forcible entry and detainer) does not supersede any available common law remedy." 26 C. J. 812. Statutes providing for it "are merely cumulative." 18 Ency. L., 2nd Ed. 436; Weber v. Grand Lodge, 169 Fed. 522; 95 C. C. A. 20; Weisman Holding Co. v. Miller, 152 Minn. 330, 188 N. W. 732.

In a New York case holding that upon breach of a tenant's covenant to pay taxes, it had been contended that under a decision of the court of appeals, Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425 the landlord's only remedy was an action of ejectment. The court construed the decision in that case differently, saying that summary proceedings for possession for nonpayment of rent, as well as ejectment, might be maintained, for the reason, "that the two remedies may be concurrent, and that neither is exclusive of the other." Crosby v. Jarvis, 46 Misc. 436; 92 N. Y. Supp. 229.

The present contention of counsel that the two remedies are held to be cumulative only when the same court has jurisdiction of both actions is not sustained by the authori-

ties, although it may, no doubt, happen, that some of the
cases cited in the former opinion and other decided cases,
may show that the same court had jurisdiction of both ac-
tions or proceedings. For that fact does not appear to have
been made the ground of a decision in any case we have ex-
amined; and there is no good reason why it should. The
action of ejectment or the code action substituted for it
must be brought in a court of record with original general
jurisdiction of causes at law, while jurisdiction in forcible
entry and detainer may be and usually is conferred upon a
court of inferior jurisdiction, and whenever jurisdiction in
such proceeding is conferred upon a court of general juris-
diction, it does not proceed therein by virtue of its power
as a court of general jurisdiction, but derives its authority
wholly from the statute, and in such proceeding is, there-
fore, to be treated as a court of special and limited juris-
diction. 11 R. C. L. 1167.

It seems to be the theory of counsel that title is not and
cannot be involved in this case, for the reason that the par-
ties are landlord and tenant. But that certainly did not
prevent the maintenance of the action by the landlord at
common law, and it cannot do so under the code. The fact
that the defendant in ejectment or the civil action of the
code may not deny the plaintiff's alleged title or is estopped
from doing so, does not affect the right of plaintiff with a
title giving the right of possession to maintain the action.
Such an admission or estoppel may render proof of title un-
necessary that otherwise would be essential to recovery.
Thus, in Newell on Ejectment, it is said: "As a general
principle, a plaintiff in ejectment must establish a legal
title to the premises in controversy. He must recover on
the strength of his own title and not on the weakness of
that of his adversary. But there are two exceptions to this
rule. Such a relation may exist between the parties as will
dispense with the production of title on the part of the
plaintiff. A party in possession under the plaintiff can not
controvert the title under which he entered. If he was ad-

mitted into the possession under a contract of purchase with the plaintiff, the latter, in an action to regain the possession, is not required to make proof of his title. And in an action against the tenant, the landlord need not show title. The tenant is estopped from denying the title of a landlord. * * * But the tenant may show that the title of the landlord has terminated either by its original limitation, or by a conveyance to himself or a third person, or by the judgment and operation of law.'' pp. 356, 357. And, under the code, the defendant may show an equitable title defeating the plaintiff's right of possession, and a tenant as against the landlord may defend by showing that he holds under a lease that has not expired. As shown above by reference to an Ohio case, it is held in that state, under the code, that where neither the title of plaintiff nor the possession of defendant can be denied, if the defendant is for any other reason, legal or equitable, entitled to possession, he may allege the facts in defense of the action. And in this action, the defendant denied in his answer the averments of the petition as to a violation of the conditions and covenants of the lease, and alleged a performance of all the conditions and covenants to be kept or performed on his part and that he was entitled to retain possession of the premises, admitting as to title only that plaintiff owned the fee. And thus the issue of right to possession based upon title was presented by the pleadings, whether it be regarded as presented by plaintiff's petition alleging the lease and its violation and forfeiture, or by defendant's answer, also alleging the lease, and its continuance in force giving him a right to retain possession.

A title in fee was never necessary to support an action of ejectment, unless essential for the purpose of showing a better title than that of the defendant in possession. Hecht v. Boughton, 2 Wyo. 385. Plaintiff must, however, show a title giving him a right of possession, though even a prior possession by a party claiming to be the owner in fee, is, in ejectment, *prima facie* evidence of his ownership. Newell

on Ejectment, 357; Freeman v. Crout, 1 Wyo. 364. And as against a mere trespasser without any shadow of title, it is sufficient to authorize a recovery. Newell, in the work cited, says, on page 433: "Possession of land is *prima facie* evidence of title, and is sufficient evidence of title as against all persons but one who can show either a prior possession or a better title, * * * and as against a subsequent intruder, without right, such prior possession is sufficient evidence of title." It was held by the Supreme Court of Oklahoma, under civil code provisions like our own, that in ejectment it is the right of possession as between the parties that is tried, "and this right of possession is the title being litigated." McElroy v. Moose, 51 Okla. 173, 151 Pac. 857.

In view of the reasons stated for our conclusion that the statutory provisions for forcible entry and detainer do not interfere in any way with the jurisdiction of the district court in an action to recover real property under the civil code, but are merely cumulative, so far as they may cover the same class or classes of cases, it seems unnecessary to discuss at any length the provisions of Sec. 6396, C. S. 1920, which is also to be found as Sec. 837 of the Code enacted in 1869. That section provides, in substance, that, where, by general or special statute, a civil action is given and the mode of proceeding therein is prescribed, the civil code shall not affect the proceedings under such statute until the legislature shall otherwise provide, but that in all such cases, so far as consistent with the statute giving the action, and practicable under the civil code, the proceedings shall be conducted in conformity thereto; that where the statute designates, by name or otherwise, the kind of action, without prescribing the mode of proceeding therein, the action shall be commenced and prosecuted in conformity with the civil code; and where the statute gives an action without designating the kind or prescribing the procedure therein, such action shall be held to be the civil action of the code and proceeded in accordingly. The decision in this case

does not in any sense whatever contravene any provision of. that section. It allows a forcible entry and detainer proceeding to be prosecuted under the statute providing for it, but holds the action in the present case to be a civil action under the code instead of said summary proceeding. That section was not intended to take away any jurisdiction of the district court granted by the Organic Act or the Constitution, but to bring within its procedure all new actions created by statute without prescribing the procedure therein. And let it be said in passing that the original law and equity jurisdiction of the district court declared by the Constitution, in the first sentence of Section 10, Art. V., is general and unlimited. The next succeeding provision of that section, referred to by counsel, was very clearly not intended to and does not qualify or limit that jurisdiction in any way; but confers *additional* original jurisdiction. It declares that said court shall "also" have original jurisdiction in cases and proceedings in which jurisdiction has not been vested by law exclusively in some other court. The word "also" is defined as meaning: "in the same manner; likewise; hence; in addition; as well; besides; too;" and, as adding "to a statement something which may be affirmed equally with what precedes." Webster's International Dictionary. The very plain interpretation of the provision is that it adds original jurisdiction in cases and proceedings that might not be included within the jurisdiction conferred by the first sentence of the section, when jurisdiction in such case has not been vested exclusively in some other court.

We think it quite unnecessary to discuss at any length the contention that, as determined by the pleadings in this case, the action is one in forcible entry and detainer. We are led to believe from the argument that said contention is largely if not entirely based upon the theory that forcible entry and detainer is the only action available to the plaintiff upon the facts alleged. The averments of the petition

are certainly sufficient under Section 6236, prescribing the essentials of a petition in an action to recover real property, and, the action having been brought in the district court, which, as we have held, has jurisdiction of the civil action brought to recover real property, notwithstanding that upon the same facts the plaintiff might have sought and recovered possession in a forcible entry and detainer proceeding, there is no reason to hold otherwise than as in the former opinion, that the action brought by the plaintiff is the civil action of the code for the recovery of real property, provided as a substitute for the common law action of ejectment.

In disposing of the question presented, we have been willing both in the former opinion and in this to consider the question without reference to or deciding the effect of the fact that plaintiff's petition in the case contains allegations of injury and loss to plaintiff caused by the alleged acts of the defendant in violation of the lease and his unlawful withholding of possession, and to show ground for enjoining the defendant during the pendency of the action from interfering in any way with the plaintiff in the preparation of the premises for cultivation during the ensuing year; or the fact that the prayer of the petition was not only for restitution but also for damages in the sum of $1386.00 and for injunction as aforesaid; nor has reference been made to the fact that the judgment complained of allows damages in the sum of $100 for breach of the covenants of the lease by defendant, and that at the beginning of the action a restraining order was issued as prayed for in the petition. Nor have we considered what might or might not be the effect in this case of the rule of law distinguishing between jurisdiction of the general subject or subject matter involved in the action and jurisdiction over the particular action by a court having jurisdiction generally of the subject matter; but have assumed without intending to decide that jurisdiction of the subject matter was so involved as

to permit the question to be raised by motion at the conclusion of the evidence upon a trial under pleadings not raising the question.

*Rehearing Denied.*

BLUME and KIMBALL, JJ., concur.