## TUTTLE v. ROHRER.

(No. 822; Decided June 29th, 1915; 149 Pac. 857.)
(Rehearing Denied December 6th, 1915; 153 Pac. 27.)

CORPORATIONS—EXCHANGE OF STOCK FOR PROPERTY—VALUE OF PROPERTY EXCHANGED—"GOOD-FAITH" RULE—"TRUE-VALUE" RULE—STOCKHOLDERS' LIABILITY—FULL-PAID STOCK—CREDITORS WITH NOTICE—DEMURRER—STATUTES.

1. Defendant, being the holder of an irrigation permit, assigned it to an irrigation company in exchange for all of its stock, comprising 1,000,000 shares of a par value of $1.00 each, which shares were issued to him, as full-paid stock. The permit was of some value, but of less value than $1,000,000.00. A creditor of the corporation sought to recover his debt from defendant on the ground that defendant's stock was not full-paid stock, alleging that the exchange transaction was put through to defeat the remedy of future creditors against holders of the stock, and as to such was fraudulent and void. *Held,* that Comp. Stats. 1910, Sec. 3989, authorized the issuance of the stock in payment of property and from an issue made by a demurrer interposed to defendant's answer, it appearing that the directors of the company had in good faith at the time placed a valuation on the permit equal to the value of the stock exchanged for it, without an intention to defraud anyone, the holder of the stock was not liable to any further payments thereon under the provisions of Comp. Stats. 1910, Secs. 3981 and 3988.

2. Where a corporation exchanged its entire capital stock for property and thereafter in all of its statements and reports so stated and reported the fact as required by Comp. Stats. 1910, Sec. 3989, and made and filed for record the certificate of full payment required by Comp. Stats. 1910, Sec. 3990, creditors dealing with the corporation were charged with notice of the actual assets of the corporation, and the

holders of such stock are not in the absence of fraud individually liable to such creditors for the debts of the corporation, if it become insolvent.

ON PETITION FOR REHEARING.

3. A paper entitled, "Petition for Rehearing," but in substance a brief, is not a compliance with Supreme Court Rule 23, requiring the filing of a petition stating points wherein it is alleged the court has erred, accompanied by a brief of which five copies shall be filed.

ERROR to the District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

The material facts are stated in the opinion.

*Marion A. Kline,* for plaintiff in error.

Defendant's answer did not set up a legal ·defense, and plaintiff's demurrer thereto should have been sustained. An over-valuation of property exchanged for corporate stock is a fraud in law. The liability of stockholders is fixed by statute. (Comp. Stats. 1910, Secs. 3988 and 3989.) One receiving stock in a corporation must pay for it either in money or money's worth. Two rules govern the exchange of property for stock, viz.: the "true-value" rule and the "good-faith" rule. Under our statute the "true-value" rule should apply. Property turned in at fictitious or imaginary value is no payment as against creditors of a corporation. (Alling v. Wenzel, 27 Ill. App. 511.) Under the "true-value" rule only cash or property equal in value to cash will be received in lieu of money. (Libby v. Tobbey, 82 Maine, 397, 19 Atl. 904; Shickle v. Watts, 94 Mo. 410, 7 S. W. 274; Farmer Bank v. Gallagher, 43 Mo App. 482.) An over-valuation of property exchanged for stock renders shareholders liable for the difference between the actual value of property and the par value of the shares without regard to the question of fraud, mistake, bad judgment or optimism. (Roman v. Demick, 115 Ala. 233, 22 So. 109; National Bank v. Pacific Railroad Co., 66 Ill. App. 320; Van Cleave v. Berkeley, 143 Mo. 109, 44 S. W. 743; Gates v. Tippecanoe Stone Co., 57 Oh. State, 60, 48 N. E. 285;

Salt Lake Co. v. Milling Co., 13 Utah, 432, 45 Pac. 200; National Tube Works v. Gilfillan, 124 N. Y. 302, 26 N. E. 538.) Similar statutes in other states are construed to mean the actual or par value of property exchanged for stock. (Kelley v. Fourth of July Mining Co., 21 Mont. 291, 53 Pac. 959; Gamble v. Queens County Water Co., 123 N. Y. 91, 25 N. E. 201, which apparently overruled Schenck v. Andrews, 57 N. Y. 133, and Bointon v. Andrews, 63 N. Y. 93; State Trust Co. v. Turner, 111 Ia. 664, 82 N. W. 1029; Shephard v. Drake, 61 Mo. App. 134; Macbeth v. Banfield, 45 Ore. 553, 78 Pac. 693; Wallace v. Carpenter, 73 N. W. 189; Elyton Land Co. v. Burningham Co., 92 Ala. 407, 9 So. 129; Gilkie v. Anson Co., 64 N. W. 978.) Defendant, Rohrer, had not acquired a water right and his permit was valueless, as there had been no beneficial use. (Const., Sec. 1, Art. 8; Willey v. Decker, 11 Wyo. 496, 73 Pac. 210.) An appropriation of water confers a right of use only. (Johnson v. Little Horse Co., 13 Wyo. 208, 79 Pac. 22.) The permit was without any real value and the allegation of "good-faith" should not be considered. (Coleman v. Howe, 154 Ill. 458, 39 N. E. 725; Lester & Halton v. Lumber Co., 71 Ark. 379, 74 S. W. 518.) The doctrine of *ejusdem generis* should be applied in the construction of Section 3989. (People v. Dolan, 5 Wyo. 245, 39 Pac. 752; Baker v. Board of County Comm., 9 Wyo. 51, 59 Pac. 797; 2nd Lewis Sutherland Stat. Cons., Secs. 422-434.) It follows that the company was without authority to accept property in payment for the capital stock of the corporation, as a water permit is not property of the class or classes mentioned in the section. If the "true-value" rule of construction be adopted, plaintiff's knowledge of the exchange transaction will not alter his right of recovery. (10 Cyc. 475; Sprague v. Bank, 172 Ill. 149, 50 N. E. 19; Moore v. W. S. B. Co., 238 Ill. 544, 78 N. E. 536; Gillette v. Trust Co., 230 Ill. 373, 82 N. E. 891; Williams v. Chamberlain, 29 Ky. L. R. 606, 94 S. W. 29; National Bank v. Brick & Tile Co., 64 Atl. 917.) The statute should be given its plain and clear meaning, as indicated by the words used.

(First Natl. Bank v. Ludvigsen, 8 Wyo. 230, 56 Pac. 994.)
The so-called "trust fund doctrine" established by Sawyer
v. Hoag, 17 Wall. 610, 21 L. Ed. 731, has been quite gen-
erally repudiated in recent years. It was rejected by this
court in Harte Drug Co. v. Rodgers Drug Co., 19 Wyo. 35.
If the property is practically worthless, its exchange for
stock amounts to no payment at all. (Cook on Corpora-
tions (7th Ed.), p. 205; Camden v. Stuart, 144 U. S. 104.)

*F. Chatterton* and *E. H. Garnett,* for defendants in error.

Plaintiff's demurrer admitted all facts alleged in the peti-
tion and admitted by the answer and all facts well pleaded
in the answer. The answer alleges that the directors of the
company in "good-faith" valued the permit and rights there-
under at $1,000,000.00 in view of the circumstances and ap-
parent opportunities of profit; that said valuation and ex-
change of stock was not made with intent to defraud cred-
itors, present or future. The questions presented involve a
construction of Secs. 3981, 3988, 3989 and 3990, Comp.
Stats. 1910. The "good-faith" rule should apply. (Schenck
v. Andrews, 57 N. Y. 133; Boynton v. Andrews, 63 N. Y.
93.) Where the property involved has a speculative value,
a greater scope of discretion is allowed. (Peck v. Calfield
Coal Co., 11 Ill. App. 88; McBride v. Farrington, 131 Fed.
797, affirmed in 149 Fed. 114.) A similar statute was con-
strued in Pennsylvania in Finletter v. Acetyline Light,
Heat & Power Co., 64 Atl. (Pa.) 429, where it was held
that question of value was to be determined as of the time
the stock was issued and that "good-faith" relieved the
stockholder from liability. In Rickerson Roller Mill Co. v.
Farrell Foundry Co., 75 Fed. 554, it was held that actual
fraud must be shown in order to hold the stockholder liable.
(See also Utica Fire Alarm Co. v. Waggoner Co., 132 N.
W. (Mich.) 506; Coffin v. Ransdell, 110 Ind. 417; Shields
v. Clifton Hill Land Co., 94 Tenn. 160; Whitchill v. Ja-
cobs, 75 Wis. 474; Kroenert v. Johnston, 19 Wash. 96;
Young v. Erie Iron Co., 65 Mich. 111; Bickley v. Schlag,
46 N. J. Eq. 533; Brant v. Ehlen, 59 Md. 1; *In re* Beachey

& Co., 170 Fed. 825; First Natl. Bank v. Northrup, 109
Pac. 672; National Bank v. Illinois Lumber Co., 101 Wis.
247; Merchants Savings Bank v. Velington Coal Co., 51
W. Va. 60; Troup v. Horbach, 53 Neb. 795; Iron Co. v.
Hays, 165 Pa. St. 489; Garden City Sand Co. v. Crematory
Co., 205 Ill. 46; Carr v. Le Fevre, 27 Pa. St. 413; Rich-
ardson v. Treasure Hill Mining Co., 65 Pac. 74; Young v.
Iron Co., 65 Mich. 111; Speer v. Bordeleau, 20 Col. App.
413; Coit v. Gold Amalgamating Co., 119 U. S. 343.)    In
states where the "true-value" rule has been adopted it has
always been qualified when the question of estoppel was in-
volved and the indebtedness was created with knowledge of
the actual assets of the company.   (State Trust Co. v.
Turner, 111 Ia. 664; Lea v. Iron Belt Mfg. Co., 147 Ala.
421; First Nat. Bk. v. Gustin Mining Co., 42 Minn. 327;
Hosper v. N. W. Mfg. Co., 48 Minn. 175; Berry v. Rood,
168 Mo. 316; Meyer v. Ruby Trust M. & M. Co., 192 Mo.
162; Biggs v. Weston, 154 S. W. (Mo.), 708.)    There can
be no fraud when a party is not deceived.   (Studer v.
Bleistein, 22 N. E. 243, 115 N. Y. 316, 5 L. R. A. 702.)
Facts constituting alleged fraud must be pleaded.   (Phoenix
Ins. Co. v. Moog, 78 Ala. 284, 301, 56 Am. Rep. 31; Stoner
v. Parsons, 103 Ala. 215, 13 South, 771, 774; Nichols v.
Stevens, 123 Mo. 96, 45 Am. St. Rep. 514, 25 S. W. 578,
583; Davis v. Davis, 55 N. J. Eq. 37, 36 Atl. 475, 476;
Avery v. Job, 25 Or. 512, 36 Pac. 293, 296; Stimson v.
Helps, 9 Colo. 33, 10 Pac. 290, 291; Mock v. Pleasants,
34 Ark. 63, 71; Seward v. Van Wyck, 8 Cow. (N. Y.)
406; Jackson v. Timmerman, 7 Wend. (N. Y.) 436; Burr
v. Clement, 9 Colo. 1, 9 Pac. 633, 638; Delaney v. Valen-
tine, 154 N. Y. 692, 49 N. E. 65, 69; Northwestern Mut.
Life Ins. Co. v. Montgomery, 116 Ga. 799, 43 S. E. 79, 80;
Foster v. Charing, 6 Bing. 396, 19 E. C. L. 183.)    Defend-
ant, Rohrer, was not a subscriber, but a purchaser of stock
and not liable to the assessment charges prescribed by Sec-
tion 3981, Comp. Stats. 1910.    A subscription to stock is a
promise to pay and a right of action thereon is not created
until a call has been made.   (Otter View Land Co. v. Bol-

lings, 70 S. W. 834, 835; Calloway v. Glenn, 49 S. W. 440, 105 Ky. 648.) The irrigation permit was property. (Const., Art. 8, Secs. 1, 2; also Sec. 3, Art. 8.) This court has designated water as property. (Willey v. Decker, 11 Wyo. 496, 73 Pac. 210.) By means of a permit, construction rights are acquired. (727 Comp. Stats. 1910.) The right attaches to the land. (Sec. 724, Comp. Stats. 1910; Frank v. Hicks, 4 Wyo. 502.) It may be sold separate from the lands. (McPhail v. Forney, 4 Wyo. 556.) Property may be tangible or intangible, corporal or incorporal. (Vol. 6, Words and Phrases, 5693; Griffith v. Charlotte, C. & A. R. Co., 23 S. C. 25, 38, 55 Am. Rep. 1.) A franchise is property. (Vol. 6, Words and Phrases, 5708, 5710.) A permit is a franchise. (Vol. 3, Words and Phrases, 2930, 2932.) Plaintiff argues that a permit is analagous to a homestead entry and gives no property right. The authorities hold otherwise. (Larson v. Weisbecker, 1 Land Dec. 409; Mudgett v. Dubuque-Sioux R. Co., 8 L. D. 243; Stark v. Morgan, 73 Kan. 453, 9 A. & E. Ann. Cases, 930; Stewart v. Powers, 98 Cal. 514, 33 Pac. Rep. 486; Orr v. Stewart, 67 Cal. 275, 7 Pac. Rep. 693; Wilcox v. John, 21 Colo. 367, 40 Pac. Rep. 880; Norris v. Heald, 12 Mont. 282, 29 Pac. Rep. 1121; Stark v. Duvall, 7 Okla. 213, 54 Pac. Rep. 453, Am. & Eng. Enc. Law (2nd Ed.) 411, 412.) The Wyoming statutes recognize possessory rights to unpatented lands as property. (Secs. 3714 and 3716, Comp. Stats. 1910.) See also as to mining rights, Black v. Elkhorn Mining Co., 163 U. S. 449; McBride v. Farrington, 131 Fed. 797. Stock may be issued for the services of a promoter, which are more intangible than a water permit. (Fitzpatrick v. O'Neill, 43 Mont. 552.) If the directors were without authority to issue the stock, their contract with Rohrer was *ultra vires* and void and could fix no liability in favor of creditors. Plaintiff was not misled in any way as to the stock issued. There was no engagement on the part of Rohrer to pay for anything more. (Kellerman v. Marer, 116 Calif. 416; Christensen v. Eno, 106 N. Y. 97; A. R. L. D. Co., 13 Colo. 587; Andrews v. National

F. & P. Works, 46 N.. S. App. 281, 36 L. R. A. 139.) The statute does not require the issuance of stock to the directors selected for the first year and named in the corporate certificate. They were at least de facto directors. (Cook on Corporations, Sec. 623, 7th Ed.) Contracts made between corporations and their stockholders are upheld even where it is provided that the stock shall be paid in cash at less than par. (Scovill v. Thayer, 105 U. S. 153; Iowa Drug Co. v. Souers, 117 N. W. (Ia.) 300; 26 Am. & Eng. Enc. of Law, 2nd Ed., 914.) A person extending credit to a corporation with knowledge of its actual assets and the terms of an agreement exchanging property for stock cannot recover where the corporation itself could not recover. (26 Am. & Eng. Enc. of Law (2nd ·Ed.) 914; Scovill v. Thayer, *supra*.) The Illinois doctrine to the contrary is not followed in other jurisdictions. (Taylor v. Walker, 117 Fed. 737; State Trust Co. v. Turner, 111 Ia. 664, 53 L. R. A. 136; National Bank v. Northrup, 109 Pac. (Ia.) 672; Lea v. Iron Belt Mercantile Co., 147 Ala. 421; Herron v. Shaw, 133 Pac. 488; Bent v. Underdown, 156 Ind. 516; Reel v. Brammer, 101 N. E. 1043; Walburn v. Chenault, 43 Kan. 352; Miller v. Higginbotham's Admr., 93 S. W. 655; Proctor v. Cook, 103 Ky. 96; Young v. Iron Co., 65 Mich. 111; First National Bank v. Gustin, 42 Minn. 327; Hospes v. Mfg. Co., 48 Minn. 175; Randall Co. v. Sanitas Water Co., 139 N. W. 606; Woolfolk v. January, 131 Mo. 620; Berry v. Rood, 168 Mo. 316; Trust Co. v. McMillan, 188 Mo. 547; Meyer v. Ruby Trust Co., 90 S. W. 821; Sprague v. Bank, 172 Ill. 168-9; Biggs v. Westen, 154 S. W. 708.)· In the above case it was shown that no payment of money, services or property was made, but the stock was issued merely as a bonus; the Missouri cases were decided under statutes prohibiting fictitious issues of stock.· (Secs. 2981 and 3094, Mo. R.. S.) The Montana case of Kelley v. Fourth of July Mining Co. is in line with the foregoing authorities. It is the rule in New Jersey (Easton National Bank v. American Brick & Tile Co., 69 N. J. Eq. 326), and in Oregon (McAllister v. American Hospital

·Assn., 125 Pac. 286; Shipman v. Construction Co., 128 Pac. 989) ; in Texas (Mathis v. Pridham, 20 S. W. 1015; Cole v. Adams, 49 S. W. 1055) ; Washington (Davies v. Ball, 116 Pac. 833; Adamant Mfg. Co. v. Wallace, 16 Wash. 614; Turner v. Bailey, 12 Wash. 634) ; West Virginia (Charleston Light & Power Co., 199 Fed. 846; Whitehill v. Jacobs, 75 Wis. 474; 1 Cook on Corporations, Sec. 46 (5th Ed), p. 135.)   The rule of estoppel is followed in the federal courts.   (Coit v. Gold A. Co., 14 Fed. 12, affirmed in 119 U. S. 343; Bank v. Alden, 129 U. S. 372: Taylor v. Walker, 117 Fed. 737; Clark v. Bever, 139 U. S. 96; Handley v. Stutz, 139 U. S. 435; Life Ins. Co. v. Cotton Exchange Real Estate Co., 46 Fed. 22; Cunningham v. Holley &c. Co., 121 Fed. 720; Anglo American Land Co. v. Lombard, 132 Fed. 721.)   There is no such thing as a liability of stockholders at common law to creditors.   The liability is purely the creation of constitutions and statutes.   (Tuttle v. National Bank of the Republic, 161 Ill. 497, 34 L. R. A. 750; Parkhurst v. Mexican S. E. R. R. Co., 102 Ill. App. 507; Terry v. Little, 101 U. S. 216; New Haven Horsenail Co. v. Linden Springs Co., 142 Mass. 349; Southworth v. Morgan, 205 N. Y. 293.)   There is no prohibition in the Wyoming statute.   (Comp. Stats. 1910, Sec. 3988.)   Alabama, Missouri, Washington and Kentucky have constitutional provisions prohibiting the issuance of stocks or bonds except for money or property actually received or labor performed and make any fictitious indebtedness or increase of stock void, yet in all of these states creditors are estopped by knowledge.   (Lea v. Iron Belt Mfg. Co., 147 Ala. 421 ; Berry v. Rood, 168 Mo. 316; Meyer v. Ruby Trust M. & M. Co., 192 Mo. 168; Davies v. Ball, 116 Pac. 883; Adamant M. Co. v. Wallace, 16 Wash. 614.)   Statutes of like import exist in Minnesota, Indiana, Iowa and Oregon.   These states have also adopted the rule of estoppel.   (State Trust Co. v. Turner, 111 Ia. 664; Bent v. Underdown, 156 Ind. 516; McAllister v. American Hosp. Assn., 125 Pac. (Ore.) 286; Hospes v. N. W. M. Co., 48 Minn. 175.)   Contracts for the sale of

stock at less than par are binding on the corporation. (Cook on Corporations (7th Ed.), Sec. 30; Scovill v. Thayer, 105 U. S. 143; Great Western Mining Co. v. Harris, 128 Fed. 321; Oil Dominion Copper Co. v. Lewisohn, 210 U. S. 206.) Only creditors who have been defrauded can complain. (Great Western Mining Co. v. Harris, *supra;* Cook on Corporations (7th Ed.), 42 and 46.) This court construed the term creditors, as used in the chattel mortgage law, to mean subsequent creditors also. (National Bank v. Ludvigsen, 8 Wyo. 230.) The principle of estoppel is also recognized in Clark v. Bever, 139 U. S. 96. (State Trust Co. v. Turner, 11 Ia. 664; Fogg v. Blair, 139 U. S. 125; Handley v. Stutz, 139 U. S. 435.)

BEARD, JUSTICE.

The plaintiff in error, who was plaintiff below, brought this action against the defendant in error, alleging in substance, so far as necessary to an understanding of the questions here presented, that Wyoming Land and Irrigation Company is a Wyoming corporation organized on March 11, 1907, with an authorized capital stock of one million dollars, divided into one million shares of the par value of one dollar each. That on the same day defendant Rohrer procured from the State Engineer a permit to appropriate the waters of Paint Rock Creek and its tributaries for the irrigation of forty-nine thousand three hundred and seventeen acres of land in Big Horn County. That thereafter Rohrer offered to the board of directors of said company to transfer to said company said permit to appropriate said waters in consideration of the delivery to him of the full amount of the capital stock of said company. That at the time of said offer both Rohrer and each member of the board of directors of said company knew that said water permit was not worth one million dollars, nor anything like said sum, but nevertheless said board of directors accepted said offer and issued to Rohrer the whole of the capital stock of said company as full paid and non-assessable in consideration of the assignment to said company of said

water permit. That said transaction was put through for the purpose of defeating any claim of future creditors of the company against the holders of said stock and as to them was fraudulent in law and void. That said water permit was in fact valueless. That in 1910 the company became indebted to one Rathbone and in 1913 Rathbone recovered a judgment for $218.00 against the company and caused execution to be issued thereon, which was returned "No property found"; and that the company is insolvent. That said judgment was afterwards assigned to plaintiff and is unpaid. That Rohrer is still the owner of more than fifty thousand shares of said stock. That said stock is not fully paid and non-assessable.

The defendants answered and, in substance, denied that at the time the offer of Rohrer was made and accepted that either he or any member of the board of directors of the company knew that said permit was not of the value of one million dollars. Averred that at that time each of them believed that an irrigation system could be constructed to utilize said appropriation of water, and believed that water rights for lands described in said permit could be sold to settlers at a profit to the company of more than a million dollars, and that said board in good faith valued said permit at one million dollars on the basis of profits it believed could be realized thereon. That the stock was issued to Rohrer without intent to defraud any one or to defeat the claim of any creditor of the company either present or future. That it had never issued any statement or report in which said stock was stated or reported to be issued for cash. That said indebtedness was incurred in 1912, and that prior thereto plaintiff's assignor was informed and well knew that the whole of said stock had been issued as full paid in consideration of said permit. That prior to the incurring of said indebtedness the president and a majority of the board of directors of the company had filed in the office of the register of deeds in the county where the business of the company was carried on a certificate stating that the

whole of the capital stock of the company had been issued for property.

A general demurrer was filed to the answer, which was overruled and plaintiff elected to stand by his demurrer, whereupon the court rendered judgment for defendant; and plaintiff brings error.

In this case it is the contention of plaintiff that the stock received by the defendant, Rohrer, is not full paid stock and that by the terms of the statute he is liable to plaintiff. The statute upon which he relies is as follows: "All stockholders of every company incorporated under the provisions of this chapter shall be severally and individually liable to the creditors of the company in which they are stockholders to the amount of unpaid assessments on capital stock held by them. respectively, and to no other or further amount, for all debts and contracts made by such company, until the whole amount of assessments on capital stock, fixed and limited by the directors, shall be paid in." * * * * (Sec. 3988, Comp. Stat. 1910.) "The directors of such company may purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be declared and taken to be full stock, and not liable to any further calls, neither shall the holder thereof he liable to any further payments under the provisions of Secs. 3981 and 3988, but in all statements and reports of the company this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the facts." (Sec. 3980.) Section 3981, referred to, provides that the directors may call on and demand from the stockholders the sums subscribed for stock from time to time. Section 3990 requires the president and a majority of the directors within thirty days after the payment of the last instalment of the capital stock to make a certificate stating the amount of the capital so paid in, and to record the same in the office of the register of deeds of the county wherein the business of the company is carried on.

Plaintiff contends that as the answer alleges only that the property received by the company in exchange for the whole amount of its capital stock was in good faith estimated by the directors to be equal to the par value of the stock, but fails to allege that it was of that value, constitutes no defense to the action, and that if the property was overvalued in fact the stockholder is liable to the extent of the difference between its actual value and the par value of the stock received therefor. That is, he contends for what is called the "true-value" rule; while defendants insist that the rule called the "good-faith" rule is the one contemplated by our statutes. Each of these rules is supported by respectable authority, and to attempt to review the cases would unnecessarily extend our opinion and would be of little value, as they are easily accessible to the profession. (Ann. Cas. 1915A (35 A. & E. Ann. Cases) 1269; R. C. L., Sec. 342; 42 L. R. A. 593; State Trust Co. v. Turner, 111 La. 664, and cases cited in the opinion.) The question we think must be determined by our statute, which expressly authorizes the issuance of stock in payment for property to its value. That value must necessarily be fixed by the parties at the time of the transaction, it being the reasonable value of the property at that time which must control, and not what it may prove to be worth at some future time. And if in their judgment in the exercise of good faith and reasonable "business sense" (as said in some of the cases) the value of the property is equal to the par value of the stock for which it is exchanged, then by the terms of the statute it shall be declared and taken to be full paid stock and not liable to any further calls, nor shall the holder be liable to further payment either to the company or to creditors of the company. On the other hand, if, as alleged in the petition, the transaction was put through for the purpose of defeating any claim of future creditors of the company against stockholders and that the permit was in fact valueless, or was over-valued for such fraudulent purpose, the stockholder would be liable unless relieved from liability on other grounds. In this case by their answer de-

fendants deny that said stock was issued for said permit with the intent to injure or defraud any person, or to defeat the claim of any creditor of the company, present or future. Deny that the permit is of no value; but, without a specific allegation that it was of the par value of the stock, allege that the board of directors in good faith valued it at that amount. Whether the transaction was had for a fraudulent purpose, or whether the board acted in good faith in an honest belief and in the exercise of reasonable business judgment in so estimating the value of the permit, or what its value in fact was are questions of fact which cannot be determined on the demurrer.

It is also alleged in the answer that plaintiff's assignor had at the time the indebtedness was contracted full knowledge of the fact that the whole of the capital stock of the company had been issued as full paid stock in consideration of the assignment to it of said permit, and that the certificate required by Section 3990 had been made and filed. The great weight of authority appears to us to be, that one dealing with a corporation with knowledge that stock has been issued as full paid in exchange for property at an amount above its actual value cannot hold such stockholder for the difference between the actual value of the property and the par value of the stock, in the absence of fraud. (Coit v. Gold Amalgamating Co., 119 U. S. 343; Bank of Fort Madison v. Alden, 129 U. S. 272; State Trust Co. v. Turner, 111 Ia. 664, and cases therein cited.) We think that rule especially applicable under our statute which directly authorizes stock to be issued for property and when so issued shall be declared and taken to be full paid stock and not subject to further calls, etc., and requiring it to be so stated in all statements and reports by the company. These provisions we think were intended to give notice to those dealing with the corporation of the actual assets of the corporation on which they could rely, and that the holders of stock so issued are not, in the absence of fraud, individually liable for the debts of the corporation when it became insolvent. We do not wish to be understood as holding that over-valu-

ation of property so received for stock is not competent evidence tending to show bad faith or fraud, and when grossly excessive may not be sufficient to establish that fact. We are of the opinion that the answer states a defense to the action and that the demurrer thereto was properly over- ruled. The judgment of the District Court is affirmed.

*Affirmed.*

Potter, C. J., and Scott, J., concur.

### ON PETITION FOR REHEARING.

Beard, Justice.

In this case the opinion was handed down June 29, 1915. (149 Pac. 857.) On July 28, 1915, plaintiff in error filed three copies of a paper entitled; "Petition for Rehearing"; and on August 4, 1915, he filed two additional copies of the same. The paper filed does not pray for a rehearing unless its title may be so considered; but is in substance a brief. If it be considered what it is entitled, then it is not accompanied by a brief as required by the rules; or if it is to be regarded as a brief, then no petition for rehearing has been filed. But assuming that it is a combination of both, still it does not comply with the rule. Rule 23 is as follows: "Applications for rehearing of any cause shall be by petition to the court, signed by counsel, briefly stating the points wherein it is alleged that the court has erred. Such petition shall be filed within thirty days after the decision is rendered and shall be accompanied by a brief (five copies of which shall be filed) of the points and authorities relied on in support thereof; but there shall be no oral argument on petitions for rehearing, unless such argument is requested by the court." Whatever construction is to be placed upon the paper filed, it does not comply with the rule, as only three instead of five copies were filed within the required time. We have, however, examined the points presented and the arguments advanced, but do not deem them meritorious. The court duly considered and decided what it deemed the real questions of law involved without regard to the fact that certain allegations in the petition, of matters

which the plaintiff evidently considered material to' allege and prove in order to maintain his action, were denied in the answer to which he filed a general demurrer. We have never understood that a demurrer should be sustained to a denial.  *Rehearing denied.* ·

POTTER, C. J., and SCOTT, J., concur.