HAYWOOD v. KUKUCHKA

(No. 2124; October 30, 1939; 95 Pac. (2d) 71)

For the appellant, the cause was submitted upon the brief of *R. G. Diefenderfer* and *John F. Raper* of Sheridan.

The cause was submitted for the respondent upon the brief of *A. W. Lonabaugh* of Sheridan.

BLUME, Justice.

This is an action in replevin, brought by the plaintiff Mary P. Haywood, as administratrix of the estate of Mike Banas, deceased, against George Kukuchka, to recover the possession of one 1934 Dodge coupe. The case was tried by the court without a jury. Judgment was in favor of the plaintiff, and the defendant has appealed. The main assignment of error, and the only one which we need to discuss, is that the undisputed evidence shows the defendant to be the owner of the automobile in question.

The deceased, Mike Banas, died on May 11, 1937. It is not disputed that he bought the automobile; that he took out the 1937 license therefor, probably in the latter part of 1936, or the early part of 1937; and that he was in possession of the car at the time of his death. These facts made a prima facie case in favor of the plaintiff, and the burden to show the contrary devolved upon defendant. Farm & Cattle Loan Co. v. Faulkner, 34 Wyo. 199, 242 Pac. 415. The defendant claims that in the spring of 1936, the deceased was under arrest on a charge of rape; that at that time, he borrowed money from the defendant in the sum of about $500; that the deceased gave defendant a note or receipt; that the deceased was unable to pay the loan, and in January, 1937, turned the car over to him in payment of the receipt or note.

The defendant introduced testimony that the loan above mentioned was made in the spring of 1936. The witness Ann Kuchera, testifying in favor of the plaintiff, stated that she bought the last car-license for the deceased and that she saw the so-called note above mentioned. She testified:

"It was just before Mike Banas bought his last car-license. I saw his note; it was in the envelope with his car papers. When he removed his car papers, the note was there. I brought the car to town, bought the last car license. He gave me a twenty dollar bill. When I returned the papers and car license, he put it back in the envelope which contains the note."

If this testimony is true, then the loan above mentioned, if made, was repaid prior to the time that the deceased bought his car license, and hence the whole theory of defendant falls. Defendant did not introduce the note or receipt in evidence, nor was it shown that it was returned to the deceased after, as is claimed, he turned over the automobile in payment of the note. The fact that plaintiff did not introduce the note in

evidence may be accounted for by the fact that the defendant took possession of the car, and probably its contents, after the death of the deceased, and prior to the time that the plaintiff obtained possession of the car. Considering all the facts, we are not prepared to say that the existence of the loan in January, 1937, was so satisfactorily shown as to compel the trial court to accept it as a proven fact.

Dr. Clegg, testifying for the defendant, stated that he was called to see the deceased on the night of May 7, 1937; that he was then unconscious; that he treated him a little; that the deceased then regained consciousness; that, by a drive of 11 miles, he took him to the hospital at Sheridan; that on the way to the hospital he had a talk with the deceased who then asked him to turn the key to the automobile over to the defendant; that the latter owned the car, and had merely loaned it to the deceased; that the deceased gave him the key after they arrived at the hospital, and he afterwards turned it over to the defendant; that, as shown by the hospital records, the deceased did not become unconscious until about 18 hours before he died, which was on May 11, 1937. The hospital records were, we think, contrary to defendant's contention, sufficiently identified. Two sheets were signed by Dr. Clegg, and in both is contained the statement that the deceased, when admitted to the hospital, was unconscious. In one of them he states: "This patient admitted May 7, unconscious, with Cheynne-Stokes respirations, pulse irregular in force and frequency. He did not respond and condition gradually grew worse until he expired May 11, 1937." Notations in other records indicate that the condition of the deceased remained the same as it was when he was admitted to the hospital. We cannot hold, we think, in view of this evidence, attention to which was called by Dr. Clegg himself, that the trial court was not justified, under the rule of falsus in uno, falsus

in omnibus, in totally disregarding the testimony of this witness as above mentioned. See Rue v. Merrill, 42 Wyo. 511, 527, 297 Pac. 379. The contradiction was not merely, we think, on a minor point, as contended by counsel for the defendant. If the deceased was unconscious when Dr. Clegg first saw him, and was unconscious when he arrived at the hospital, after a drive of 11 miles, and continuously thereafter, the inference is not too remote that he was probably in no condition during any of that time to tell of the ownership of his car. Dr. Clegg's testimony could, under the circumstances, be credited, or fully credited, only if the state of unconsciousness of the deceased were minimized. Such minimizing was important for such purpose, but was directly contradicted by the doctor's own records.

Three of the defendant's sons were witnesses in the case. Paul testified to a conversation between his father and the deceased in January, 1937; that defendant asked deceased for the money due him; that deceased stated that he couldn't pay, and turned the automobile over to defendant; that at that time the key to the car was given to the defendant, as well as some papers; that thereafter deceased asked defendant for the use of the car, and that he was refused at three different times. Another son, John, gave an entirely different version of the conversation. He stated: "Mike says he has no money, but he says he will turn this car over to him, and the first time they get together in town, they will have this fixed up"; that deceased turned the "papers to the car" over to the defendant. It does not appear that the proposal to "fix it up" was ever carried out. A third son, George, testified that the deceased told him in Billings in January, 1937, that "everything (supposedly including the automobile) belongs to Dad"—the defendant. The witness asked the deceased for the use of the car the following April, but the deceased answered: "No, you have to see Dad; I

haven't a thing to say about it." It may be noted, that, although the witness already knew in January, according to his statement, that his father owned the car, he nevertheless asked the deceased for the use of it in April.

The witness Mazure, who, as counsel say, was a disinterested witness and a friend of the deceased, testified that he had a conversation with the deceased at Sheridan some three or four weeks before the latter's death; that the conversation at that time was as follows: "I made mention, 'I don't see you very often here in town.' He answered back to me 'Well, first thing, I am badly off; I am sick; then, I can't use my car as often as I could, because this car I gave to George Kukuchka; that is his. I don't think I ever could pay him those moneys because I don't think I will last very long; I will die pretty soon. I don't think I can pay those debts, so I turned the car over to him.—I owe him five hundred dollars besides the board.' "

Counsel for the defendant argue that the testimony of these four witnesses stands absolutely uncontradicted in the record, and that the court had no right to ignore it. The sons of the defendant, however, were interested parties; there is more or less discrepancy in their testimony; the trial court saw them upon the witness stand, and we cannot hold that it had not the right to refuse to believe them. Counsel particularly complain that the court rejected the testimony of the witness Mazure, who, they claim, was an entirely disinterested witness. We cannot say that that is certain. He was very friendly to the defendant. The court saw him, too, on the witness stand. His testimony is to some extent at least contradicted. In the first place, if the testimony of the witness Kuchera is true, then the deceased did not owe the defendant the sum of $500, and it was for the trial court to say as to whether or not the deceased was likely to state the contrary in

April, 1937. Furthermore, if the deceased had in mind that he wanted to "fix up" the transaction with the defendant; that is to say, transfer the title to him, the talk with the witness Mazure would have called his attention to the necessity or advisability to do so, especially in view of the fact that he was then, as Mazure stated, conscious of the fact that he would soon die. But he never did, fully corroborating the witness Kuchera, who testified that the deceased disclaimed that he owed anything to the defendant. It was not necessary, in order to make out a bill of sale, that the defendant should be present. And we think further, that the fact that the deceased at the time of his death, or at the time when he became unconscious, had possession of the automobile, together with the key thereto, is, under the circumstances, strong evidence of the fact that he had the exclusive right thereto, and more or less contradicting all of the defendant's testimony in the case, including that of Mazure. We find a somewhat analogous situation in connection with the law of fraudulent conveyances. The retention of possession by the seller, after a sale, as is claimed, has been made, is a badge of fraud, more or less conclusive. 27 C. J. 494, 573. Reasoning by analogy we may say, we think, that the retention of possession in the case at bar shows that no sale as claimed has actually been made. In other words, as already stated, it directly contradicts all testimony to the contrary, so that the claim that the testimony for the defendant is uncontradicted is not correct. We have attempted to weigh all the evidence with care, and have concluded that we cannot say that the trial court's decision is not sustained by substantial evidence.

We have not mentioned the conversation of Mr. Raper, one of the counsel for the defendant, with the witness Haywood to the effect that Mr. Raper stated that the defendant had a claim of a board bill and for

50

a note against the deceased, and that the automobile in question was held by his client for that reason. If what Mr. Raper told the witness is true, then, of course, it is altogether clear that the judgment of the trial court is right. We do not rest our conclusion herein on that testimony, and hence do not determine whether that evidence was admissible or not, although, we may add, no question in regard thereto has been raised.

It follows from what we have said that the judgment below must be affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.