MAE E. BECK,

*Plaintiff and Appellant*

**vs.**

EARL GIVENS, as Administrator of the Estate of Donald Givens, Deceased,

*Defendant and Respondent.*

(No. 2767; April 9th, 1957; 309 Pac. (2d) 715.)

For the plaintiff and appellant, the cause was submitted upon the brief of Spence and Hill of Riverton, Wyoming.

178

For the defendant and respondent, the cause was submitted upon the brief of Moran, Murphy and Hettingerof Riverton, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, J. J.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Plaintiff, Mae E. Beck, brought an action against Earl Givens, in his capacity as administrator of his father's estate, seeking to be adjudged the owner of 165 sheep and all cattle bearing D/G brand, together with calves, which livestock were in possession of defendant. Plaintiff's claim was based on two purported bills of sale to her from the deceased. Defendant's resistance to the action stemmed from the claim that the bills of sale were ineffective to transfer title to plaintiff.

The answer admitted that deceased died on February 22, 1956, and admitted defendant's possession of the livestock, but alleged that the animals had been the property of the deceased, that plaintiff's claim to them was invalid, and that defendant properly held them as the representative of deceased's estate.

On the trial, claimant's witnesses were Mae E. Beck, the plaintiff; Sharon Beck, her daughter; and the defendant, who was called for the purpose of cross-examination. Defendant objected to testimony by plaintiff on the ground that § 3-2603, W.C.S.1945, the "dead man's statute," prohibited such testimony. This objection was sustained to all but a few questions, and plaintiff thereupon made an offer of proof covering

testimony which she proposed to present. The daughter, Sharon Beck, testified that plaintiff and deceased had lived together some eleven years, that she had thought they were married. She identified Plaintiff's Exhibit No. 1, a brand inspection certificate covering some 159 sheep and containing thereon in the handwriting of deceased the following:

"February 4, 1956

"Sold to Mae Beck for 10$^{00}$ and other valuable consideration Same being at Pitts Ranch

    "Donald Givens"

testifying that on February 4, 1956, in her presence at their home decedent had given the instrument to the witness's mother, stating that he wanted to give it to her, and that plaintiff had thereafter "put it up." The witness also indentified Plaintiff's Exhibit No. 2, reading as follows:

"February 15, 1956

"Sold to Mae E Beck for 10/00 ten dollars and other valuable consideration

All cattle branded D/G numbering at least seven head

    "Donald Givens"

and stated that the instrument had been found by plaintiff in her desk after decedent's death. Both of these exhibits were introduced in evidence without objection from defendant.

At the close of plaintiff's evidence, defendant moved for judgment. When the motion was denied, he took

the stand in his own defense and called Alvin Givens, a son of deceased. Plaintiff's attempt to testify in rebuttal was limited by defendant's further objection, based on the "dead man's statute."

The trial court found, inter alia, "That Donald Givens died * * * by his own hand * * * and * * * left in the plaintiff's home two memorandums dated February 4th and February 15th, respectively, designated as Plaintiff's Exhibits 1 and 2, which recite in Donald Givens' handwriting, 'Sold to Mae Beck for $10 and other valuable considerations' certain livestock * * *. * * * that if the documents in question were intended by the deceased to evidence a gift *inter vivos* or *causa mortis* by the deceased to the plaintiff in contemplation of his suicide, the language of the documents themselves is insufficient to indicate such a gift, and the evidence does not disclose that the documents had been placed by the decedent beyond his control, so that in fact no delivery of the documents had been made prior to his death * * *."

The judgment on this finding stated that the instruments "are in effect only memorandums of an agreement of sale when in fact no agreement for the sale of the property in question had been entered upon or agreed to by the deceased and the plaintiff * * *."

Plaintiff's specifications of error, dealing generally with the rejection of plaintiff's testimony and with the alleged incorrectness of the court's findings of fact and conclusions of law, are attacked by defendant as indefinite and objectionable. Defendant further insists that plaintiff's argument in the brief departs from the specifications and approaches the appeal as if the matter is to be considered *de novo* rather than on appeal. Without passing upon any alleged inept-

ness of the specifications or their lack of unity with the current argument, it is sufficient at this point to say that the propriety of the judgment depends upon three questions.

First. Did the trial court disregard the uncontradicted testimony of the daughter, Sharon Beck, and if so, was the court justified in so doing?

Second. Was the February 4 instrument, Plaintiff's Exhibit No. 1, a valid transfer of the animals described therein, notwithstanding the fact that the parties had failed to move the animals?

Third. Was the February 15 instrument, Plaintiff's Exhibit No. 2, a valid transfer of the animals described therein, notwithstanding the fact that the parties had failed to move the animals?

Considering the first question thus presented, we are unable to say whether or not the trial court disregarded the testimony of Sharon Beck. The judgment does not evaluate her testimony or state what the evidence shows, and the record contains no indication in this regard. However, defendant in his brief states:

"* * * It is believed, further, that the nature of the testimony of Sharon Beck, daughter of plaintiff, in direct and cross-examination, in its uncertainty, its contradictions, its misstatements, and its admitted attempt to testify to matters as they had been told to her by her mother, the plaintiff and appellant, rather than of her own knowledge, was such that the court would have been at liberty to disregard it in its entirety."

In the light of this rather sweeping observation, it seems appropriate that we state our views on the subject.

The right of a trial court to disregard the uncontradicted testimony of a witness poses a problem regarding which there has been a lack of unanimity of opinion. It has been stated that undiscredited testimony of a disinterested witness to facts of themselves not improbable constitutes a legal establishment of the facts about which testimony is given. It has also been said that the testimony of a witness even though uncontradicted is for the triers of fact, whether court or jury, who are not bound thereby, and that the testimony may be disregarded if evasive, equivocal, improbable, impossible, or contrary to physical facts, laws of nature, or scientific principles. See generally on the subject 20 Am.Jur., Evidence § 1180; Annotations, 8 A.L.R. 796, 72 A.L.R. 27; Haywood v. Kukuchka, 55 Wyo. 41, 95 P.2d 71.

As will be indicated by a search of Evidence, Key-Number 594, West's American Digest System, the cases on the subject are multitudinous and the decisions divergent depending on the facts in each instance. A few statements from representative cases are worthy of consideration:

"* * * since there is no testimony to the contrary and no reason appears for doubting the accuracy of observation or credibility of the witnesses, their statements should be accepted." International Shoe Co. v. Federal Trade Commission, 280 U.S. 291, 50 S.Ct. 89, 74 L.Ed. 431, 441.

To a similar effect see Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983, and Pence v. United States, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510 (rehearing denied 316 U.S. 712, 62 S.Ct. 1287, 86 L.Ed. 1777).

"* * * * The evidence of the witness * * * was unimpeached and uncontradicted, and its credibility was in

no manner brought in question. This being so, the district judge could not reject his testimony or find contrary thereto. * * *" United States v. Johnson, 5 Cir., 208 F.2nd 729, 730.

"* * * uncontradicted and unimpeached testimony can not *arbitrarily* be disregarded. * * *" Kneeland v. Ethicon Suture Laboratories, Inc., 118 Cal.App.2d 211, 257 P.2d 727, 738.

See McVey v. McVey, 132 Cal.App.2d 120, 281 P.2d 898, quoting the Kneeland case.

"* * * The rule is well established in this state that the court or jury cannot disregard the positive testimony of an unimpeached witness unless and until its improbability or inconsistency furnishes a reasonable ground for so doing, and this improbability or inconsistency must appear from thefacts and circumstances disclosed by the record in the case. It cannot be arbitrarily disregarded by either court or jury, for reasons resting wholly in their own minds, and not based upon anything appearing on the trial. [Citing many cases.] * * *" O'Leary v. Wangensteen, 175 Minn. 368, 221 N.W. 430,431.

See also Ressen v. Northwestern National Bank and Trust Co. of Minneapolis, 238 Minn. 314, 56 N.W. 2d 663, citing the O'Leary case.

We are convinced that the trier of fact should be accorded great freedom in the evaluation of the testimony of the witnesses, but we are in doubt that we should go so far as to impute to such trier of fact an intention to arbitrarily disregard the undisputed testimony of a witness. The record in this case indicates that there were some inconsistencies in the testimony of Sharon Beck; but on the whole we find no such evasiveness, equivocation, improbability or impossibility as to warrant the presumption that the trial court

arbitrarily disregarded her testimony, without mentioning that fact.

Assuming then that as Sharon Beck testified the purported bill of sale for the sheep was given to plaintiff by the deceased and that deceased stated he wanted to give it to her, we pass to the second question: Was the February 4 instrument, Plaintiff's Exhibit No. 1, a valid transfer of the animals described therein, notwithstanding the fact that the parties had failed to move the animals?

Defendant, apparently relying upon the court's finding of decedent's suicide and upon the reference by plaintiff's counsel to *causa mortis,* has discussed at some length Begovich v. Kruljac, 38 Wyo. 365, 267 P. 426, 60 A.L.R. 1046, and Annotation, 60 A.L.R. 1054 (supplementing Annotation, 3 A.L.R. 902). The Begovich case is not in point as it clearly related to a gift *causa mortis* and, accordingly, could be of assistance here only because of the court's discussion therein concerning the requirements for a valid gift *inter vivos.* Such statements are correct but are quite general and difficult of application to the present situation. Each of the annotations quoted in part by defendant bears the title "Delivery of personalty to third person with directions to deliver after donor's death as valid gift." The title itself clearly indicates the inapplicability of those discussions to the question now before us. In the present case there is no claim that anything, either instrument or property, was given to a third person to be turned over to plaintiff; and the situation here presented is so different from any of those covered by the citations that the mentioned principles cannot be controlling—or even persuasive.

Defendant's arguments on this phase of the case are

difficult to follow. He erroneously assumes that plaintiff "had no knowledge of the contents of Exhibit 1 * * * until after the death of decedent * * * [and] * * * first discovered the writing of decedent on Exhibit 1 on April 1; she had not known of it until then." Also in certain portions of his discussions, he states that "delivery of the thing itself, or that which represents the thing, a placing beyond the control of the party is essential to both a gift *inter vivos* and a gift *causa mortis*," while elsewhere he stated "delivery [apparently meaning delivery of the article itself] must be clear, complete and unequivocal; all possession, dominion and control over the subject matter of the gift, whether it be the entire thing or the thing subject to a lesser interest, must pass entirely and irrevocably from the donor at the time." If he thus seriously contends that the failure of the plaintiff to take actual possession of the sheep renders ineffective the gift for lack of delivery then his citation of Annotation, 48 A.L.R.2d 1405 (supplementing Annotation, 63 A.L.R. 537), entitled "Delivery as essential to gift of tangible chattels or securities by written instrument," would seem to be authority *against* rather than favoring such contention:

"The later cases appear to support the rule that no delivery of a tangible chattel or security is necessary to a gift thereof where the gift is evidenced by a formally executed and delivered deed or other instrument under seal, and the same appears to be true where the written instrument relied upon, although not under seal, is a formally executed assignment or bill of sale of the property." Annotation, 48 A.L.R.2d 1405, 1407. "A gift inter vivos of tangible chattels or securities may be sustained even in the absence of delivery of the property, where the gift is evidenced by a formal instrument purporting to transfer the property.

"The above rule would also appear to be supported by

those cases * * * holding that an informal instrument was sufficient to support the gift." Annotation, 48 A.L.R.2d 1405, 1409.'

These statements would seem to sufficiently refute any contention that the actual delivery of the animals is essential to the validity of the bill of sale; and we are further convinced on this point by the cases cited by plaintiff: Fredenburg v. Horn, 108 Or. 672, 218 P. 939, 30 A.L.R. 1153; Fontron Loan and Trust Co. v. Korzuszkiewicz, 125 Kan. 725, 266 P. 649; Sylvain v. Page, 84 Mont. 424, 276 P. 16, 63 A.L.R. 528. On facts substantially similar to those before us, these cases indicate that the delivery of an instrument consummates a gift. Generally it is held that an actual delivery is necessary for the consummation of a gift either *inter vivos* or *causa mortis* when the subject is capable of manual delivery; but where manual delivery of the property cannot be made, the delivery of an instrument constitutes a symbolic or constructive delivery of the gift so as to meet the legal requirements. See 24 Am.Jur., Gifts §§ 24, 26, 27. This rule would seem to be particularly applicable in a situation relating to livestock. The evidence in this case shows that the purported bill of sale for the sheep was handed to the plaintiff by deceased on February 4 and that she accepted the same. This we think was sufficient to evidence the transfer of the animals to plaintiff even though she may not have read the instrument fully or been aware of her rights until after the deceased's death. Defendant in his argument relies upon plaintiff's testimony to show that she "had no knowledge of the contents of Exhibit 1 * * * until after the death of decedent." However, we find such testimony to be equivocal and subject to various interpretations. So far as material to this point, the testimony reads as follows:

"Q. Did you ever physically take possession of these sheep that are shown in Exhibit 1? A. I tried to.

"Q. When did you try to? A. A number of occasions, a number of times after I found the bill of sale.

"Q. When was that? A. Well, when I read the writing on this back page. The three papers were fastened together, and when I saw this writing on the white sheet on Exhibit No. 1 was on the first day of April, and from then on I tried to get help in taking possession of the sheep."

If defendant thought that this testimony tended to contradict that of Sharon Beck then it was his obligation to pursue the matter and clearly point out any discrepancy rather than to leave the situation nebulous and now argue about it. To us the quoted testimony of the plaintiff might be interpreted in any one of a number of ways, either that plaintiff had accepted the instrument but had paid no attention to it; that she had mislaid it and forgotten it; or possibly, as defendant insists, that she had never known anything about it before. In any event, an interpretation should not be placed upon her testimony in order to contradict that of another witness unless the meaning of such contradiction be clear. While the major discussion in the briefs concerned the subject of gifts, there was some reference to the question of whether or not the conduct of the parties in this case might indicate a sale. There were also numerous citations of sales law as peripheral to the subject of gifts. For the purpose of this case, it is unimportant to determine whether or not the transfer of the animals by the purported bill of sale (Plaintiff's Exhibit No. 1) was a sale or a gift *inter vivos* since in the field of sales as well as in that of gifts the delivery of a bill of sale under certain cir-

cumstances has been recognized as constituting a constructive or symbolic delivery of the personal property.

We turn then to the third question: Was the February 15 instrument, Plaintiff's Exhibit No. 2, a valid transfer of the animals described therein, notwithstanding the fact that the parties had failed to move the animals? This, to us, does not merit extended discussion in view of the fact that plaintiff's own statement of the law, "The bill of sale must be duly executed, and it is not executed until it has been signed and * * * delivered [77 C.J.S., Sales § 126]," belies her claim that there is validity in the bill of sale which was found some time after the decedent's death. A further statement quoted by plaintiff provided:

"While possession of the instrument is usually sufficient evidence of delivery, delivery will not be presumed from possession if it appears that there was never any intent on the part of the seller to give possession or to deliver." 77 C.J.S., Sales § 127.

There was no evidence of delivery of the purported bill of sale for the cattle (Plaintiff's Exhibit No. 2) to the plaintiff, unless we should say that the mere presence of the instrument in plaintiff's house was a delivery. This we think is unwarranted since we do not even know who placed the instrument in the desk, let alone what he was thinking. Moreover, plaintiff has supplied no law covering this situation.

As far as any claim of a gift *inter vivos*, there is an entire lack of evidence as to any acceptance; and although under certain circumstances acceptance of a gift beneficial to a donee has been presumed, we think that there could be no justification in stretching both the law and the facts to the point that we would *assume*

facts which would constitute delivery and then *presume* acceptance.

In the light of the foregoing analyses and rules, we find that the judgment of the trial court was in error as relates to the purported bill of sale for the sheep, which instrument by uncontroverted evidence was delivered to plaintiff by the deceased. As regards this instrument, the case is reversed; and it is directed that a judgment be entered decreeing that the plaintiff is the owner of those sheep described in the purported bill of sale (Plaintiff's Exhibit No. 1). As regards the purported bill of sale for the cattle, we find that the judgment is correct and should be affirmed.

Plaintiff has complained that the trial court sustained defendant's objection to plaintiff's testimony under § 3-2603; but we do not find it essential to discuss this point since plaintiff's testimony, according to her offer of proof, would have been practically identical to and merely corroborative of the uncontradicted statements of her daughter, Sharon Beck.

Reversed in part; affirmed in part.

## ON PETITION FOR REHEARING.

(No. 2767; July 23rd, 1957; 313 Pac. (2d) 977.)

OPINION

PER CURIAM.

Defendant has filed a petition stating various reasons why a rehearing should be granted. We are impressed now as we were in the initial presentation of the case by counsel's ability, industry, and sincerity. Accordingly, any nonconcurrence with defendant's views on certain phases of the case arises because of the inherent difference of human viewpoint and the inevitability that in every case courts must disagree with and discard the position taken by one or the other of the litigants. Our analysis and discussion of the present case while completely objective may from the viewpoint of an interested party have appeared to be otherwise. This is often true where one litigant, feeling impelled to prevail over the other, places great emphasis on *his own* solution. A court in considering the problems of any disputants may choose either (a) the presented views which are to be finally adopted or (b) those supporting the opposing theory. The choice of one over the other is no reflection upon counsel, although it has apparently been so interpreted in this instance. Under the circumstances, we shall further delineate our views even though the petition for rehearing was not accompanied by a brief.[1]

As we interpret defendant's petition, he insists that he does not comprehend the basis for our opinion, urging especially that:

(1) The burden is upon appellant to show wherein

[1]Numerous cases indicate that a party failing to so file is not entitled to consideration. See Tuttle v Rohrer, 23 Wyo. 305, 153 p. 27; Allen v. Houn, 30 Wyo. 186, 219 P. 573; and Henning v. Miller, 44 Wyo. 114, 14 P. 2d 437.

the trial court erred in its decision, all unspecified matters being waived.

(2) Defendant's statement that plaintiff did not know of the bill of sale for the sheep until April 1, 1956, was borne out by the record.

(3) This court failed to give the reasons why the bill of sale covering the sheep was considered to be valid.

A review of the entire situation points up the reason for defendant's continued insistence on the correctness of his position. It stems from his initial concept that the testimony of plaintiff's daughter, Sharon Beck, was unworthy of belief and that "the court would have been at liberty to disregard it in its entirety." As we pointed out in the original opinion, and shall discuss hereafter, we are in fundamental disagreement with defendant on this controlling point.

Adverting then to the first of the three points raised in the petition, we agree that the burden was on plaintiff (appellant) to show wherein the trial court erred in its decision and all unspecified matters were waived. However, plaintiff met the requirements of this rule by (a) alleging in the specifications of error that there was not competent evidence to support or warrant the findings of fact contained in the judgment and (b) in support thereof, presenting argument and legal authority that it was incumbent upon the court to consider the testimony of Sharon Beck.

In the opinion at 309 P.2d 717 we discussed a number of authorities relating to the necessity of a court's considering uncontradicted testimony. Reference to that discussion is unwarranted here, except to note the

impropriety of arbitrarily disregarding uncontradicted and unimpeached testimony. Since the judgment stated no reason for the disregarding of this witness's unchallenged testimony, we assumed it to have been given consideration by the court. No other testimony was presented regarding either the delivery or the non-delivery of the bill of sale to plaintiff by the deceased. Thus, the finding of the court that the documents in question were never in fact actually delivered to plaintiff was clearly in error as unsupported by and contrary to the only testimony in the case.

Defendant's second point, that plaintiff did not know of the bill of sale for the sheep until April 1, 1956, is closely related to the subject last above discussed. The testimony of the daughter clearly showed that plaintiff received the instrument on February 24, 1956, and consequently knew of it at that time; and plaintiff's statement that she saw the writing on the bill of sale covering the sheep on April 1 was not a contradiction. Actually, the point is resolved by the well known rule that every witness is presumed to tell the truth, although such presumption is rebuttable and may be overcome. See 70 C.J. 760. 2 Bancroft's Code Practice and Remedies, 1927, p. 1888, states another version of the rule:

"* * * where the positive testimony of a witness is uncontradicted and he is unimpeached,—whether by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic,—it cannot be disregarded, but should be considered by the jury. * * *"

This principle is supported by many cases and is sanctioned by all of the leading authorities. See Annotation, 8 A.L.R. 796; 6 Jones Commentaries on Evidence, 2d ed., p. 4887; and 9 Wigmore on Evidence,

3d ed., p. 300 ff., which latter text cites two interesting cases: Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 72 A.L.R. 7. In the present case, the daughter was not shown to have any interest in the outcome of the litigation, but even if this had been true, the testimony of a witness may not be disregarded merely because of an interest in the result. See In re Miller's Will, 49 Or. 452, 90 P. 1002, 124 Am.St.Rep. 1051, 14 Ann.Cas. 277.

We turn then to defendant's third point, that this court failed to give the reasons why the bill of sale covering the sheep was considered to be valid. This was not specifically discussed in the opinion. We did hold that the instrument by uncontroverted evidence was delivered to plaintiff (not to a third person) by the deceased and that no delivery of a tangible chattel is necessary to constitute a gift. By a fair inference, we held that there was no evidence of a gift *causa mortis*. We did not determine where the bill of sale was given in consideration of past services rendered unto deceased or was a gift. As the evidence was susceptible of either interpretation, we see no point in expressing any view on that subject.

The review occasioned by the petition serves to emphasize not only the initial obligation of a plaintiff to meet his burden of proof but also the succeeding obligation of a defendant to challenge plaintiff's proof if he deems it to be vulnerable. In social or business life, it is sometimes possible to ignore or disregard the words of a speaker without reason; but in the orderly trial of cases, a litigant is entitled to assume that unattacked evidence properly presented to a court will receive consideration and that the result of the action will depend upon the evidence which is adduced.

We find no sufficient reason for granting a rehearing and the same is therefore denied.